ANN ARBOR BANK & TRUST COMPANY v COMMISSIONER OF
THE FINANCIAL INSTITUTIONS BUREAU

Docket No. 77-3684. Submitted May 8, 1978, at Lansing.—Decided
August 8, 1978. Leave to appeal applied for.

Defendant The Saline Bank, a Michigan bank with its principal
office in Saline, Washtenaw County, applied to the Commis-
sioner of Financial Institutions for approval of a branch bank
in Pittsfield Township in Washtenaw County. Hearings were
held before an administrative law judge at which Ann Arbor
Bank and Trust Company, Community Bank of Washtenaw,
Huron Valley National Bank, National Bank and Trust Com-
pany of Ann Arbor, and Ypsilanti Savings Bank, appeared to
oppose the application. The administrative law judge filed a
"Proposal for Decision" with the Financial Institutions Bureau
wherein he made proposed findings of fact and conclusions of
law recommending approval of the application. The opposing
banks filed objections and oral argument was had. The commis-
sioner entered an order adopting the proposal for decision of
the administrative law judge and approving the branch bank
application. The opposing banks filed suit against the commis-
sioner and The Saline Bank alleging the proposed branch did
not meet the statutory criteria. The Washtenaw Circuit Court,
Edward D. Deake, J., set aside the commissioner's order and
permanently enjoined permission for the proposed branch
bank. The Saline Bank appeals. *Held:*

1. Appellate review of administrative decisions should not
consist of substituting a new judgment as to the facts where
there is substantial evidence to support the administrative
decision; the reasons for this rule are: (a) that the fact finder
who has a visual opportunity to view candor or lack of it on the
part of the witnesses is believed to have a superior position
from which to draw these conclusions than he who has only a
written record to review; and (b) those who spend substantially

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 2 Am Jur 2d, Administrative Law §§ 621, 675, 682 *et seq.*
[3–5] 10 Am Jur 2d, Banks § 324.
What is a "branch bank" within statutes regulating the establish-
ment of branch banks. 23 ALR3d 683.

all of their time in the employ of administrative agencies are deemed to acquire a specialized expertise in determination of the particular issues regularly facing the agency.

2. The responsibility of the Court of Appeals in reviewing on appeal a circuit court's appellate review of an administrative agency's decision is to determine if the circuit court correctly applied the substantial evidence test.

3. In order to approve an application for a branch bank the Commissioner of Financial Institutions must be satisfied that: (1) there is a necessity for establishment of the branch; (2) that the parent bank possesses a sufficiency of capital and surplus; and (3) that there are prospects for successful operation of the branch; the term "necessity" means a substantial or obvious need in view of the disclosed circumstances: neither absolute or indispensable need, on the one hand, nor mere convenience on the other.

4. It was not an abuse of discretion for the Commissioner of Financial Institutions, in reviewing and deciding upon an application for a branch bank, to require the banks opposing the application to show compelling adverse factors in view of the fact that the policy of this state in regard to banking is pro-competition, provided it is not destructive and unsound competition.

Reversed.

1. ADMINISTRATIVE LAW—APPELLATE REVIEW—CONSTITUTIONAL LAW —STATUTES—SUBSTANTIAL EVIDENCE TEST.

Appellate review of administrative decisions should not consist of substituting a new judgment as to the facts where there is substantial evidence to support the administrative decision; the reasons for this rule are that the fact finder who has a visual opportunity to view candor or lack of it on the part of the witnesses is believed to have a superior position from which to draw conclusions than he who has only a written record to review and those who spend substantially all of their time in the employ of administrative agencies are deemed to acquire a specialized expertise in determination of the particular issues regularly facing the agency (Const 1963, art VI, § 28, MCL 24.306; MSA 3.560[206]).

2. ADMINISTRATIVE LAW—APPELLATE REVIEW—SUBSTANTIAL EVIDENCE TEST.

The responsibility of the Court of Appeals in reviewing on appeal a circuit court's appellate review of an administrative agency's

decision is to determine if the circuit court correctly applied the substantial evidence test.

3. BANKS AND BANKING—BRANCH BANKS—APPLICATION FOR A BRANCH BANK.

In order to approve an application for a branch bank the Commissioner of Financial Institutions must be satisfied that: (1) there is a necessity for establishment of the branch; (2) that the parent bank possesses a sufficiency of capital and surplus; and (3) that there are prospects for successful operation of the branch; the term "necessity" means a substantial or obvious need in view of the disclosed circumstances: neither absolute or indispensible need, on the one hand, nor mere convenience on the other.

4. BANKS AND BANKING—BRANCH BANKS—APPLICATION FOR A BRANCH BANK—COMPETITION—PUBLIC POLICY.

It was not an abuse of discretion for the Commissioner of Financial Institutions, in reviewing and deciding upon an application for a branch bank, to require the banks opposing the application to show compelling adverse factors in view of the fact that the policy of this state in regard to banking is pro-competition, provided it is not destructive and unsound competition.

5. BANKS AND BANKING—BRANCH BANKS—STATUTES—APPLICATION FOR NEW BRANCH—LOCATION OF BRANCH BANKS—MOOT QUESTION.

The 1978 amendment to the statute governing the establishment and operations of branch banks now allows a bank to establish a branch in the same county in which the parent bank is located in any location not in a city or incorporated village and it is no longer necessary for a bank, seeking approval of an application for a branch bank within its home county, to prove the location is within a statutory unincorporated village; it need only show that the location is not in an incorporated city or village and the satisfaction of the Commissioner of Financial Institutions that: (1) there is a necessity for establishment of the branch, (2) that the parent bank possesses a sufficiency of capital and surplus, and (3) that there are prospects for successful operation of the branch; the question of whether the commissioner's finding that the area is an unincorporated village within the meaning of the statute is now moot [MCL 487.471; MSA 23.710(171)].

*Foster, Meade, Magill, Rumsey & Deloof,* for plaintiffs.

*Bodman, Longley, Bogle & Dahling* (by *Carson C. Grunewald)*, for defendant Saline Bank.

Before: BEASLEY, P. J., and ALLEN and H. E. DEMING,* JJ.

BEASLEY, P. J. Defendant-appellant, The Saline Bank,[1] a Michigan banking corporation with its principal office in Saline in Washtenaw County and hereinafter referred to as defendant, requested the commissioner of the Financial Institutions Bureau to approve location by defendant of a branch bank in Pittsfield Township, also in Washtenaw County, under MCL 487.471; MSA 23.710(171). Plaintiff banks, which are located in the area, protested the granting of permission.

Hearings were conducted before an administrative law judge, after which he filed a "Proposal for Decision", making proposed findings of fact and conclusions of law, the effect of which was to recommend approval of defendant's application.

Plaintiffs filed exceptions, objecting to the proposal pursuant to MCL 24.281; MSA 3.560(181). Defendant responded and oral argument was had.

The commissioner filed an order adopting the proposal for decision of the administrative law judge and granting defendant permission to locate a branch in Pittsfield Township. Continuing to protest, plaintiffs filed a complaint in the Washtenaw County Circuit Court, claiming that the proposed branch did not meet the statutory criteria for establishment of a branch bank. In a thorough opinion, the trial court held with plaintiffs, set

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] In 1974, defendant-appellant, The Saline Bank, a Michigan Banking Corporation, was acquired by Manufacturers National Corporation, a bank holding company.

aside the commissioner's order and permanently enjoined permitting the requested branch bank. From that judgment, defendant appeals as of right.

The trial court reversed the administrative finding that the area defined by defendant is an unincorporated village within the meaning of MCL 487.471; MSA 23.710(171) as it existed at the time of hearing, holding there was no substantial evidence to support the finding.[2] However, in 1978, the Legislature amended § 171(1) to read as follows:

"With the written approval of the commissioner, any bank may establish and operate a branch or branches within the same county in which the parent bank has its principal office or, if not in the county, then within 25 miles of the parent bank or in a contiguous county at a point more than 25 miles from the parent bank, if the county does not have a bank. A branch shall not be established in a city or incorporated village in which a state or national bank or branch thereof is then in operation. The commissioner shall not grant approval unless he is satisfied as to the sufficiency of the capital and surplus of the bank, the necessity for the establishment of the branch or branches and the prospects of successful operation if established." MCL 487.471; MSA 23.710(171), as amended in February, 1978.[3]

The effect of this amendment to the statute is to allow a bank to establish a branch in the same county in which the parent bank is located, in any location not in or part of a city or incorporated village provided the other statutory requirements

[2] The trial court's judgment was entered on September 9, 1977, prior to the hereinafter referred to 1978 amendment to the statute.

[3] 1978 PA 17, effective February 14, 1978, amended § 171(1) to read as indicated.

are met.[4] Thus, it is no longer necessary to do as the defendant bank attempted to do here, *i.e.,* set up the concept of a separate statutory unincorporated village with specific boundaries in which a branch could properly be established and operated. In this case, the location in which defendant seeks permission to open a branch is *not* in a city or incorporated village.

Also, the branch proposed by defendant bank in the instant case would be in the same county as the parent bank, and would, therefore, meet that requirement of the statute as amended.

Usually in appellate review, we look to the law as it was at the time of the judicial or administrative action from which appeal is taken. To do so here would be to perform an idle and useless action. No longer does it make any difference whether defendant-appellant has proved the existence of an unincorporated village with the specified boundaries. For purposes of this appeal, the question of whether the commissioner's finding that the area described by defendant is an unincorporated village within the meaning of the statute before the subject amendment is supported by the evidence has become moot.[5] The amendment to the statute eliminates this requirement.

Considering then that it is no longer necessary to decide this issue, we proceed to the standard to be applied to the commissioner's order on appellate review.

The 1963 Michigan Constitution provides a minimum judicial review for all administrative decisions in the following language:

---

[4] A branch may *not* be established in a city or incorporated village if there is already a state bank, a national bank, or a branch of either in operation.

[5] *Cornell Development Co v Ypsilanti,* 48 Mich App 261; 210 NW2d 259 (1973), *Swinehart v Secretary of State,* 27 Mich App 318; 183 NW2d 397 (1970).

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28.

The Administrative Procedures Act of 1969 implements the review afforded by the constitution, as follows:

"Sec. 106. (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

"(b) In excess of the statutory authority or jurisdiction of the agency.

"(c) Made upon unlawful procedure resulting in material prejudice to a party.

"(d) *Not supported by competent, material and substantial evidence on the whole record.*

"(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

"(f) Affected by other substantial and material error of law.

"(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings."[6] (Emphasis added.)

In general, the substantial evidence test means that if there is substantial evidence to support the administrative decision, the appellate function should *not* consist of substituting a new judgment

---

[6] MCL 24.306; MSA 3.560(206).

as to the facts. Two reasons are usually given for this rule. First, the fact finder who observes the witness testifying, who sees how the witness reacts to cross-examination, who has a visual opportunity to view candor or lack of it on the part of the witness, and to form a firsthand judgment as to the believability of the witness, is believed to have a superior position and a better vantage point and opportunity to draw these conclusions than he or she who has only a written record to review. Second, those who spend substantially all of their time in the employ of administrative agencies are deemed to acquire a specialized expertise in determination of the particular issues regularly facing the agency. Thus, where the fact finding involves an area peculiarly fitted or adapted to specialization, those exercising the appellate function should hesitate to substitute their judgment for that of him or her who possesses the expertise—at least where substantial evidence supports the expert's finding.

These two underlying bases for the rule that gives deference and special weight to administrative fact-findings are sometimes in conflict. For example, in the context of this application for permission to open a branch bank case, it is only the administrative law judge who has seen the witnesses and heard their testimony. On the other hand, it is the commissioner of financial institutions who is deemed to possess the peculiar expertise regarding the statutory issues involved in decisions whether to grant permission for a branch bank. However, in this case, we are not called upon to decide the relative weight to be attached to opportunity to see and hear the witnesses as compared to particular expertise regarding branch banking statutory issues because the commissioner

has adopted the recommendations of the administrative law judge. While he has amplified some of the conclusions and given consideration to the objections of the protesting banks, it cannot fairly be said that the commissioner's findings conflict with those of the administrative law judge.

The circuit court judge, here acting in an appellate capacity, has reviewed the commissioner's findings and order. In so doing, he has expressly acknowledged his duty to refrain from merely substituting his own judgment and has undertaken to apply the substantial evidence test. Our responsibility is to determine whether he has correctly applied that test.

In *MERC v Detroit Symphony Orchestra, Inc,*[7] Justice FITZGERALD has written a penetrating analysis of the scope of review required in appeals from administrative rulings. Among other things, he says:

"What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two rea-

---

[7] 393 Mich 116, 124; 223 NW2d 283 (1974). The line between a meaningful review and an evaluation of all the evidence on the one hand and giving due deference to administrative expertise and the province of exclusive administrative fact-finding on the other, is not only narrow, but difficult to draw. It is neither substituting a new judgment on the facts nor rubber-stamping approval of administrative decisions. No one has described it better than Justice FITZGERALD.

sonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review."

Thus, the issues here are:

1) Under the statute, what facts must be found to support giving of consent for a branch bank?

2) Are the findings of fact supported by competent, material and substantial evidence on the whole record?

The requirements for approval under the statute do not seem in dispute. The commissioner must be satisfied that there is a necessity for establishment of the branch, that the parent bank possesses a sufficiency of capital and surplus, and that there are prospects of successful operation of the branch.

The word "necessity", as used in the pertinent portion of the banking statute, has received careful and full attention in the Michigan cases. In *Moran v State Banking Commissioner,*[8] the Supreme Court reversed denial of an application for a charter for a new bank in Detroit saying:

"We are in accord with the defendant's position that mere convenience is not sufficient to satisfy the statutory requisite of 'necessity.' But when supplemented by proof of facts and circumstances which, as in the instant case, are persuasive of 'necessity,' it is proper to take into consideration testimony as to the element of convenience. We have not found, nor has there been called to our attention by counsel, a decision wherein there is a precise definition of 'necessity' when used in a statute relative to the issuance of a bank charter."

In *Wyandotte Savings Bank v State Banking*

---

[8] 322 Mich 230, 243–244; 33 NW2d 772 (1948); *also see,* 19 Wayne L Rev 1137 (1973), for discussion of meaning of necessity under the Michigan cases.

*Commissioner,*[9] the Supreme Court, in affirming approval of a branch bank in Ecorse Township in Wayne County, said:

"The act requires * * * that the commission shall not permit the establishment of branches unless it is 'satisfied' as to 'the necessity for the establishment of such a branch.' * * * The discretion thus vested in the commission as to necessity, however, is not the necessity of absolute or indispensable need, * * * nor at the other extreme is it the imaginary need of whimsy or caprice, or even the 'need' of mere convenience. It is, rather, a substantial or obvious need in view of the disclosed relevant circumstances."

In the within case, there is ample evidence to support the finding that the proposed branch will promote the convenience of residents and businesses in the vicinity. While there was conflict in the evidence, the administrative law judge leaned toward finding future growth in the area that would further justify approval of this branch.

In the "Proposal for Decision", which the commissioner largely adopted, the administrative law judge, in ruling on necessity, took into consideration the commissioner's pro-competitive policy of December 2, 1975, which he recited as follows:

"Within the context of existing statutory requirements, the Bureau will take a more pro-competitive attitude toward the establishment of branch banks, weighing the benefits to the public of greater competition against the deteriorating impact on other banks in the same area."

After referring to the evidence, the administrative law judge applied the commissioner's pro-competitive policy, found no compelling adverse fac-

[9] 347 Mich 33, 45–46; 78 NW2d 612 (1956).

tors sufficient to preclude granting approval of the application and, reviewing the record as a whole, concluded necessity within the meaning of the banking code had been shown.

The commissioner received the Proposal for Decision of the administrative law judge and considered it, along with protestants' exceptions and applicant's response. He indicated the he weighed the pro-competitive policy against detrimental impact on other banks. He concluded that granting this application would not cause fragmentation of the banking market to the detriment of existing banks.

While the opinions of the experts are in conflict, there is sufficient evidence to support the commissioner's conclusions. With respect to necessity, the trial judge appeared to substitute his judgment for that of the commissioner. He says flatly that it was error for the commissioner to give greater weight to the applicant's expert than the expert testifying for the protesting banks. The trial judge said:

"This Court rules that in making his finding of 'necessity,' the defendant Commissioner erroneously placed more weight on the testimony of Dr. Austin than on the testimony of Dr. Baxter. Dr. Austin's computations dealing with the development of deposit potential had nothing to do with the question of necessity. His opinion on the question of necessity made no reference to his alleged study of the primary service area. Dr. Baxter introduced 22 different tables and charts in support of his study of the Ann Arbor/Ypsilanti area. His testimony to the effect that there is no need and necessity for another bank in the existing market stands in contrast to Dr. Austin's conclusion. This Court finds that the substantial evidence in the record showed that it was Dr. Baxter who made the detailed study of the necessity issue and that the defendant Commissioner

should have put greater reliance on the testimony of Dr. Baxter concerning necessity than on the testimony of Dr. Austin."

These conclusions impinge upon the prerogatives of the fact finder. On this record, the trial judge lacked adequate basis to reverse the findings of the commissioner regarding necessity.

We note that the *pro-competitive policy* of the commissioner was a factor in his decision.

The Banking Code of 1969[10] does not declare in so many words a "pro-competitive attitude toward establishment of branch banks", but it does provide for allowing new banks or branch banks if the requirements are met. The primary function of banking facilities involves the welfare and convenience of the portion of the public concerned. There is no statutory purpose to provide existing banks with a monopoly or to limit competition merely for the sake of limiting competition.[11]

Section 2 of the Banking Code of 1969[12] provides:

"It is the policy of this state that the business of all banking organizations shall be supervised and regulated in such manner as to insure the safe and sound conduct of such business, to conserve their assets and to eliminate unsound and destructive competition among such banking organizations and thus to maintain public confidence in such business and protect the public interest and the interests of depositors, creditors and shareholders."

Obviously, the commissioner's pro-competitive policy must be interpreted so as to be consistent with the declared statutory policy. The statute

---

[10] 1969 PA 319, immediate effect August 20 (MCL 487.301 *et seq.;* 23.710(1) *et seq.*).

[11] *Moran v State Banking Commissioner, supra.*

[12] MCL 487.302; MSA 23.710(2).

outlaws only "unsound" and "destructive" competition; competition that is sound and not destructive is not prohibited.

On May 3, 1976, in his executive order 1976-4, Governor Milliken established the Governors Advisory Commission on the regulation of financial institutions, part of which reads as follows:

"The commission shall be charged with, but not limited to, the following responsibilities:

"1. To analyze the present and expected future structure of the Michigan financial community and the competitive relationship between different types of financial institutions and recommend legislation to effect desirable changes in the structure of the financial community and *to facilitate competition* among the members and components of that structure, consistent with the objectives of capital availability, consumer protection, and the fair and equitable regulation of financial institutions.

* * *

"3. To examine the laws granting regulatory powers to the Commissioner of Financial Institutions; and recommend legislation which would clarify the legal considerations which the commissioner must use as his basis for decision in exercising these powers." (Emphasis added.)

We recognize that this quoted executive order does not deal with branch banks as such, but we cite it to indicate that, in general, in the banking business in this state, a climate of competition is recognized to be in the public interest.

In the *Wyandotte Savings Bank* case, *supra,* plaintiffs were a Wyandotte State Bank and a Wyandotte National Bank, each of which maintained branches near the border between the City of Wyandotte and the Township of Ecorse. Defend-

ant, Security Bank, had its home office in the City of Lincoln Park and three branches, one of which was near the border between the City of Lincoln Park and the Township of Ecorse. Defendant Security Bank sought approval of a branch in the Township of Ecorse. When the commissioner granted permission, plaintiff banks sought to have the order vacated and establishment of the branch enjoined. While the litigation revolved around the issue of whether the statute prohibited a branch in an unincorporated village, implicit in plaintiffs' position was a desire to limit competition. The Supreme Court's decision in affirming permission for the branch was a vote for competition. The *Moran* decision, *supra,* has been interpreted to suggest that banking administrative agencies should not be over-solicitous in protecting existing banks from competition.[13] In enacting the Banking Code of 1969, the legislative hearings appeared to assume a policy of pro-competition.[14]

We conclude that, with respect to branch banking, the policy of this state, as found in the statutes, case law and administrative practice, is pro-competition, provided the competition is not "destructive and unsound", any new branch bank is

[13] *See,* 71 Yale L J 502 (1962) for an interesting article on banking competition.

[14] Report on the Michigan Banking Structure, § XI(B), pp 92–93, Prepared for the Joint Senate-House Bank Study Committee of the Michigan Legislature, January 10, 1969, which states in part:

"In particular the case for the present rule which extends 'protection' to all banking offices, whereby any city or village that has a banking office (main office or branch) is closed to branching by any bank from outside the city or village, strikes us as weak. One effect of this rule is to cause a fragmentation of banking services in metropolitan areas. To the extent that such statutes can be shown to be essential to preserve small, independent banks they may be justified. But too often they serve merely to protect perfectly healthy and vigorous banks from the cold breeze of competition. And it should never be forgotten that healthy competition among banks is always in the best interest of the public, regardless of the fact that it may result in a more difficult or less profitable life for individual bankers."

"necessary", the parent bank possesses sufficient capital and surplus to establish a branch and there are prospects for successful operation of the branch.

In so finding, we reject the protesting banks' claim that the commissioner's policy, particularly in requiring them to show "compelling adverse factors", constitutes an abuse of discretion and an unwarranted amendment to the statutory policy.

The commissioner enjoys broad powers under the statutes.[15] In *Commissioner of Banking v Berry*,[16] this Court said:

"But it is equally indisputable that the regulation of banks and other such institutions burdened with a public trust have never been treated as an 'ordinary case'—and rightfully so. The banking business, more than any other, has been the subject of the most careful scrutiny of regulatory agencies. The unique character and tradition of banking often justify the delegation of extremely broad discretionary powers to state banking commissioners which, if attempted elsewhere, would likely violate due process. 1 Davis, Administrative Law Treatise, § 4.04, p 247."

We believe the clear implication of the statute is to afford the commissioner wide discretion in promulgating policy. We find no abuse of discretion in his adopting a more pro-competition policy for branch banks; on the contrary, for the reasons indicated, we perceive no error of law in the commissioner following such a policy.

The commissioner's finding that granting the subject application for a branch bank did not constitute such destructive and unsound competition as to outweigh his conclusions regarding ne-

---

[15] MCL 487.311–487.315, 487.319, 487.335–487.337, 487.425; MSA 23.710(11)–23.710(15), 23.710(19), 23.710(35)–23.710(37), 23.710(125).

[16] 27 Mich App 271, 306–307; 183 NW2d 436 (1970).

cessity was not clearly erroneous. There was substantial evidence to support the finding.

We conclude that the commissioner's finding that applicants had made a sufficient showing of necessity for permission to maintain the subject branch bank was not clearly erroneous.

On the record in this case, the trial judge was in error when he found that there was not substantial evidence to support the commissioner's decision. The administrative law judge found that applicant bank had sufficient capital and surplus to justify opening of the requested branch. There was substantial evidence to support the finding.

The administrative law judge also found prospects of successful operation if established. The testimony relevant to this issue was in conflict. The commissioner appeared to recognize this was a close question, but concluded the evidence was sufficient to justify granting the application for the branch.

The trial judge found the prospects for successful operation "dim", but did not see fit to reverse the commissioner on that issue. Neither did he reverse the commissioner's finding that there was adequate capital and surplus to support establishment of the proposed branch.

In fact, perhaps the largest reason for the trial judge's reversal of the commissioner's grant of the application was his analysis of the "village" requirement. Of course, the trial judge's decision was prior to the amendment of the statute which, as we have heretofore in this opinion indicated, now makes this issue moot.

In summary, we find the commissioner's grant of the application to establish and maintain the proposed branch was supported by substantial evidence. The statutory requirements were sufficient-

ly met. It is unnecessary to rule on the commissioner's disposition of the "village" requirement because the amendment to the statute makes that issue moot.

Thus, the reversal by the trial court of the commissioner's grant of the application was in error and must be reversed.

Reversed and the findings of the Commissioner of Financial Institutions are affirmed.