DeHART v STATE BOARD OF REGISTRATION IN PODIATRY

Docket No. 78-3366. Submitted June 19, 1979, at Lansing.—Decided May 5, 1980.

The State Board of Registration in Podiatry (hereinafter defendant) issued an order revoking the license of William W. DeHart, Jr. (hereinafter plaintiff) to practice podiatry on the ground of wilful and gross malpractice or neglect. Defendant's decision followed an extensive hearing concerned with plaintiff's alleged misconduct consisting of the administration of intravenous therapy called "chelation therapy" and the performance of surgery on six patients. Defendant made the following findings of fact: (a) plaintiff performed surgery without patients' knowledge, (b) plaintiff performed bone surgery instead of expressly requested corn removal, (c) in one case plaintiff performed twenty separate surgical procedures on ten different dates cutting out all the patient's joints connecting the toes to the main part of the foot, which surgery the defendant found unnecessary and not related to the foot ailment from which the patient suffered, and (d) plaintiff, in another case, failed to take adequate precautions in light of a patient's diabetic condition and performed unjustified surgery without consent. Plaintiff appealed to Ingham County Circuit Court, which affirmed the defendant's decision, James T. Kallman, J. Plaintiff appeals. *Held:*

1. The standard "wilful and gross malpractice or wilful and gross neglect in the practice of podiatry" found in the Podiatry Act is a constitutionally sufficient standard for revoking a podiatrist's license since it is specific enough to give notice to a podiatrist of the type of conduct which is improper and could lead to the revocation of his professional license.

2. A person practicing a healing arts profession for which he

REFERENCES FOR POINTS IN HEADNOTES
[1] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 45, 46, 62.
[2, 4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 111.
[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 19, 27.
[5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 76.
[6] 30 Am Jur 2d, Evidence § 1088.

holds no license is required to adhere to the standards of practice of those who are properly licensed.

3. The Podiatry Act does not vest podiatrists with general authority to treat ailments of the human body merely because such treatment may be incidentally beneficial to the human foot.

4. A podiatrist invading the field of medicine is no longer acting as a podiatrist and has no greater authority to engage in the unlicensed practice of medicine than any other unlicensed person; therefore he is held to conformity to the accepted standards of medical practice, not podiatric practice.

5. A decision of the Board of Registration in Podiatry must be in accordance with competent, material and substantial evidence and such a decision will ordinarily be upheld since it is not the reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of the witnesses.

Affirmed.

1. Licenses — Podiatrists — Revocation of License — Constitutionality.

   The standard "wilful and gross malpractice or wilful and gross neglect in the practice of podiatry" found in the Podiatry Act, is a constitutionally sufficient standard for revoking a podiatrist's license; it is specific enough to give notice to a podiatrist of the type of conduct which is improper and could lead to the revocation of his professional license (MCL 338.302[11]; MSA 14.662[11]).

2. Licenses — Healing Arts Standards.

   A person practicing a healing arts profession for which he holds no license is required to adhere to the standards of practice of those who are properly licensed.

3. Licenses — Podiatry — Podiatry Act — Scope of Authority.

   The Podiatry Act does not vest podiatrists with general authority to treat ailments of the human body merely because such treatment may be incidentally beneficial to the human foot (MCL 338.301; MSA 14.661).

4. Licenses — Podiatry — Podiatry Act — Scope of Authority.

   A podiatrist invading the field of medicine is no longer acting as a podiatrist and has no greater authority to engage in the unlicensed practice of medicine than any other unlicensed person; therefore, he is held to conformity to the accepted standards of medical practice, not podiatric practice.

5. Administrative Law — Podiatry — Review.

   A decision of the Board of Registration in Podiatry must be in accordance with competent, material and substantial evidence, and such a decision will ordinarily be upheld since it is not the reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of the witnesses.

6. Evidence — Weight of Evidence — Witnesses.

   The weight to be given testimony does not depend on the number of witnesses that testified for each side.

*Farhat, Burns & Story, P.C.* (by *Vittorio E. Porco*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Patrick F. Isom,* Assistant Attorney General, for defendant.

Before: Cynar, P.J., and MacKenzie and L. W. Corkin,* JJ.

MacKenzie, J. On October 4, 1977, defendant Board of Registration in Podiatry issued an order revoking the license of plaintiff William W. De-Hart, Jr. to practice podiatry on the ground of wilful and gross malpractice or neglect. Plaintiff appealed to Ingham County Circuit Court, which affirmed the Board's decision revoking plaintiff's license on August 8, 1978. Plaintiff now appeals as of right.

The Board's decision followed an extensive hearing concerned with alleged misconduct consisting of the administration of intravenous therapy termed "chelation therapy", contrary to standards of practice set forth in the Board's findings of fact, and also the performance of surgery on six patients. The Board made findings of wilful and gross neglect and malpractice, specifically, as follows:

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

plaintiff performed surgery without patients' knowledge, plaintiff performed bone surgery instead of expressly requested corn removal, plaintiff, in one case, performed twenty separate surgical procedures on ten different dates cutting out all the patient's joints connecting toes to the main part of the foot, which surgery the Board found was unnecessary and not related to the foot ailment from which the patient suffered, and plaintiff, in another case, failed to take adequate precautions in light of a patient's diabetic condition, and performed unjustified surgery without consent.

I

Plaintiff first contends that the statutory language "wilful and gross malpractice or wilful and gross neglect in the practice of podiatry" does not provide a constitutionally sufficient standard for revoking a podiatrist's license. We disagree. According to § 2 of the Podiatry Act:

"The board may refuse to issue or continue and may revoke or suspend a certificate of qualification or license and may place on probation a person who has: * * *

(e) Committed wilful and gross malpractice or wilful and gross neglect in the practice of podiatry." MCL 338.302(11); MSA 14.662(11).[1]

---

[1] The challenged scheme has since been repealed and replaced by the new, comprehensive Public Health Code, 1978 PA 368, effective September 30, 1978, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.* In particular, the statutory standard under which the plaintiff had his license revoked has been repealed by MCL 333.25101; MSA 14.15(25101) and replaced with the standards set forth in § 1622 of the Public Health Code, MCL 333.16221; MSA 14.15(16221). Except for the purpose of assisting in the interpretation of the challenged provisions of the prior law, the application of these new provisions will not be considered in this opinion since their application has been neither argued nor relied on by the parties to this appeal.

We believe that the standard "wilful and gross malpractice or wilful and gross neglect in the practice of podiatry" is specific enough to give notice to a podiatrist of the type of conduct which is improper and could lead to the revocation of his professional license. In *Wozniak v State Board of Examiners in Optometry,* 23 Mich App 630; 179 NW2d 210 (1970), this Court upheld charges against an optometrist of gross incompetence and malpractice, finding such standards sufficient upon which to base a complaint.

We note that similar standards have been upheld in other jurisdictions. In *Yoshizawa v Hewitt,* 52 F2d 411 (CA 9, 1931), the defendant doctor was charged with professional misconduct and gross carelessness and/or manifest incapacity as a physician. The court stated that "gross carelessness" was synonymous with "gross negligence", and that the term had an ascertainable meaning to the medical profession as well as to the layman. Thus, the court held that the term "gross carelessness" was not vague and that the charge filed sufficiently gave the defendant notice of the nature of the allegation he was called upon to defend. See generally 61 Am Jur 2d, Physicians, Surgeons, Etc. § 62, p 185; 28 ALR3d 487.

We do not believe that the holding in *State Board of Dentistry v Blumer,* 78 Mich App 679, 683; 261 NW2d 186 (1977), mandates a different result. In *Blumer,* this Court held that reliance of the State Board of Dentistry on the undefined standards of "dishonorable" and "unprofessional" in revoking the plaintiff's license to practice dentistry violated due process because it gave the board unlimited discretion in determining the type of conduct which would result in revocation of a license. The standard "guilty of dishonorable or

unprofessional conduct in the practice of dentistry" is much broader than the standard "wilful and gross malpractice or wilful and gross neglect in the practice of podiatry", since dishonorable or unprofessional conduct can encompass numerous other acts in addition to malpractice or negligence in performing services.

## II

Plaintiff next contends he did not receive a fair hearing because the chief complaining witness of the Board of Registration in Podiatry had a strong personal bias against the plaintiff. We are unable to conclude that defendant was denied a fair hearing. The Board was free to consider the bias of the witness toward the plaintiff and to evaluate the credibility and weight to be afforded his testimony. See *Clark v State Board of Registration in Medicine,* 367 Mich 343, 348; 116 NW2d 797 (1962).

## III

Plaintiff next contends it was improper for the Board to rely on expert medical testimony to establish the applicable standard of care for the administration of chelation therapy by a podiatrist. Plaintiff argues that in the absence of proof of a podiatric standard, he may not be found to have committed "wilful and gross malpractice or wilful and gross neglect in the practice of podiatry". Clearly, that is the general rule. This case can be distinguished from those to which the general rule applies, however.

The first distinction is founded upon the conclusion that chelation therapy is not a method of therapy within the lawful scope of podiatry. That

is, chelation therapy constitutes the practice of allopathic medicine, not podiatry. The hearing examiner below so concluded. Upon a review of the hearing examiner's opinion, the Board agreed with factual findings regarding chelation therapy, but rejected the legal conclusion that the treatment exceeds the lawful scope of podiatry. The Board agreed that no other podiatrist in plaintiff's locale performed chelation therapy, but held that the record was insufficient to support a conclusion one way or the other as to whether the treatment exceeded the scope of podiatry. In reaching its conclusion on this issue, the Board committed an error of legal reasoning which was harmless, since the Board correctly applied the medical standard of practice.

When one practices a healing arts profession for which he holds no license, he is required to adhere to the standards of practice of those who are properly licensed. Thus, in the instant case, since the plaintiff unlawfully invaded the field of medicine, his actions were properly judged by the standards of practice for licensed doctors of medicine.

Chelation therapy as practiced by plaintiff was intravenous injection of chemicals into the bloodstream. Plaintiff learned about the therapy from a medical doctor in California who utilized it. The claimed benefits of the treatment were numerous and varied, including: reduction of blood cholesterol levels, reduction of high blood pressure, dissolving kidney stones, improving vision in diabetic retinopathy, and aiding innumerable other conditions relating to the human body. The treatment was to remove claimed impurities in the blood, termed "blood sludge" or "fungus".

The lawful scope of podiatric practice is defined in § 1 of the Podiatry Act, *supra,* as follows:

"As used in this act, 'podiatrist' or 'chiropodist' means a physician and surgeon who examines, diagnoses, and treats abnormal nails, superficial excrescences occurring on the hands and feet, including corns, warts, callosities, bunions, and arch troubles or *one who treats medically, surgically, mechanically, or by physiotherapy, ailments of the human foot,* or one who is qualified as a podiatrist or chiropodist within the meaning of this act, except as hereinafter provided, through a certificate of qualification or license issued by the board of registration in podiatry. The words 'chiropodist', 'chiropody', and 'chiropodical' are synonymous with the words 'podiatrist', 'podiatry', and 'podiatric'." MCL 338.301; MSA 14.661. (Emphasis added.)

Essentially, then, a podiatrist is one who treats ailments of the human foot, a limited practitioner who is only authorized to treat human feet. A podiatrist is not a medical or osteopathic doctor who specializes in treatment of the foot.

The plaintiff's theory is that chelation therapy is within the scope of podiatry because it improves blood circulation, and improved blood circulation speeds the healing process when the podiatrist performs surgery on patients' feet. We disagree. Chelation therapy as practiced by plaintiff was treatment which could have affected the whole body of the patient and not just ailments of the foot. The statute does not vest podiatrists with general authority to treat ailments of the human body because such treatment may be incidentally beneficial to the human foot.

Plaintiff's use of chelation therapy constitutes the practice of medicine as defined in § 2(g) of the Medical Practice Act, 1973 PA 185, as amended; MCL 338.1801 *et seq.;* MSA 14.542(1) *et seq.*[2] It lies without that narrow segment of the practice of

---

[2] The Medical Practice Act, *supra,* was repealed and superseded by the Public Health Code, 1978 PA 368, as amended.

medicine in which a podiatrist is entitled to engage. When plaintiff so invaded the field of medicine, he was no longer acting as a podiatrist. He had no greater authority to engage in the unlicensed practice of medicine than any other unlicensed person; therefore, he is held to conformity to the accepted standards of *medical,* not *podiatric,* practice. As the Court held in *Simpson v Hubert,* 35 Mich App 523, 528; 193 NW2d 68 (1971):

"The standard of care, whether the action is against an impostor or a true member of the profession, is the same; both are required to conform to the standard of care of a member of the profession."

Testimony as to the proper medical standard was introduced into the record below through the testimony of a medical doctor, Alvin M. Parfitt.

Plaintiff contends that Dr. Parfitt did not testify as to a general standard of practice but merely gave his own personal standards. We disagree. In fact, Dr. Parfitt testified that while he did not personally subscribe to the claims made on the benefits of chelation therapy, he was familiar with the medical literature and practice standards of those who had accepted the claims. Dr. Parfitt also described the kinds of test which would be done to determine whether a patient was a candidate for chelation therapy, which included a full physical examination.

The Board found that, while Dr. Parfitt did not testify specifically as to standards of podiatric practice in the administration of chelation therapy, he did testify as to the standard of practice in medicine for the administration of chelation therapy and for the administration of intravenous therapy generally. The Board then determined that the same standards applicable to medicine

with regard to intravenous therapy also apply to a podiatrist administering chelation therapy. The Board found the accepted standard of practice included the following:

"1. An adequate history and physical examination of the patient must be taken prior to administration.

"2. An adequate check of the vital signs, *i.e.,* blood pressure, pulse rate and respiration, prior to administration, monitoring thereof during administration and checking after administration are required.

"3. Blood testing, urine testing, and kidney function testing prior to administration are required."

The Board then found that plaintiff had breached the standard. The record clearly substantiates the Board's finding that plaintiff failed to comply with the applicable standard.

## IV

Plaintiff contends that the findings of the Board of Registration in Podiatry are not supported by competent, material, and substantial evidence. We cannot agree with this contention.

A decision of the Board of Registration in Podiatry must be in accordance with competent, material, and substantial evidence. MCL 24.285; MSA 3.560(185). Findings of the tribunal will ordinarily be upheld since it is not the reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of the witnesses. See *Soto v Director of the Michigan Dep't of Social Services,* 73 Mich App 263, 272; 251 NW2d 292 (1977).

Plaintiff's basic position is that the Board erred in believing Dr. W. E. DeHart's testimony over that of several other witnesses. This position is untenable, however, since the weight to be given

testimony does not depend on the number of witnesses that testified for each side. See *Rossien v Berry,* 305 Mich 693, 701; 9 NW2d 895 (1943). Our review of the record persuades us that there was competent, material, and substantial evidence on the record as a whole to support the conclusions reached by the Board.

## V

Plaintiff next contends that the Board of Registration in Podiatry abused its discretion by revoking the plaintiff's license rather than imposing a less severe sanction. The language of MCL 338.302(11); MSA 14.662(11) provides that upon proof that a person committed wilful and gross malpractice or gross neglect in the practice of podiatry, the Board may revoke or suspend a certificate of qualification or license and may place the party on probation. In the absence of abuse, we will not disturb the Board's exercise of discretion in this matter. A review of the record reveals a sound basis for the action of the Board since plaintiff was found guilty of seven counts of wilful and gross malpractice or neglect.

## VI

Plaintiff contends that the circuit court erred in denying his request to file interrogatories and requests for admission for the purpose of establishing that the members of the Board had not read the entire administrative record.

According to MCL 24.281(1); MSA 3.560(181):

"When the official or a majority of the officials of the agency who are to make a final decision have not heard a contested case or read the record, the decision, if

adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision is served on the parties, and an opportunity is given to each party adversely affected to file exceptions and present written arguments to the officials who are to make the decision. Oral argument may be permitted with consent of the agency."

The circuit court granted the Board's motion for objection to the interrogatories and requests for admission, noting that it was required to review the Board's decision based on the record as it was presented on appeal from the administrative decision.

We are unable to conclude that the circuit court's decision constituted an abuse of discretion. In the final decision of the Board, the four members participating signed their names directly below the following order:

"Upon having read the testimony in this cause and having reviewed the evidence, and considered the briefs and arguments of counsel herein, it is hereby ordered that License No. 572 issued to William W. DeHart, Jr., D.P.M. by the Board of Registration in Podiatry be and is revoked for the foregoing violations of Section 2(6)(e)[3] of the Podiatry Act, 1915 PA 115, as amended."

In addition, a review of the final decision indicates that the Board members carefully reviewed the entire record.

Affirmed.

[3] MCL 338.302(2)(11)(e); MSA 14.662(2)(11)(e).