SILLERY v BOARD OF MEDICINE

Docket No. 76943. Submitted April 2, 1985, at Detroit.—Decided
September 16, 1985. Leave to appeal applied for.

The Attorney General filed a four count complaint with the
Board of Medicine seeking suspension of the license to practice
medicine of Robert J. Sillery. The complaint alleged that Dr.
Sillery prepared an autopsy report which indicated that he had
performed a much more extensive examination than he really
had undertaken. Count I of the complaint charged that by
performing an incompetent autopsy Sillery had failed to con-
form to the minimal standards of accepted and prevailing
practice. Count II charged that the falsification of the autopsy
findings constituted a departure from acceptable and prevailing
practice. Count III charged that failure to perform a competent
autopsy constituted negligence or failure to exercise due care.
Count IV charged that falsification of the findings in the
autopsy report constituted negligence or failure to exercise due
care. Following an administrative hearing, the hearing officer
dismissed Counts I, II and III because of the absence of any
evidence regarding what constituted a competent autopsy and
the absence of any expert testimony defining the minimum
standards of acceptable and prevailing practice. The hearing
examiner did, however, find that the filing of a false and
inaccurate autopsy report fell within the ambit of the statutory
provision which permits disciplining where there is negligence
or failure to exercise due care. Sillery's license to practice

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Administrative Law §§ 148 *et seq.,* 180, 351 *et seq.*
See the annotations in the ALR3d/4th Quick Index under Adminis-
trative Law.

[2] Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 74-130 *et
seq.*
Wrongful or excessive prescription of drug as ground for revocation
or suspension of physician's or dentist's license to practice. 22
ALR4th 668.

[3] Am Jur 2d, Physicians, Surgeons, and Other Healers § 113.
Admissibility and necessity of expert evidence in proceedings for
revocation of license of physician, surgeon, or dentist. 6 ALR2d
675.

medicine was suspended by the Board of Medicine. Sillery filed a petition for review in Wayne Circuit Court. The court, Robert J. Colombo, J., reversed the board's order, holding that the statutory "negligence or failure to exercise due care" standard was not sufficiently precise to afford Sillery notice of the prohibited conduct and, accordingly, constituted a denial of due process. The Board of Medicine appealed. *Held:*

1. The statutory provision permitting the disciplining of a person holding a license to practice medicine for "negligence or failure to exercise due care" is sufficiently specific so as to give notice of the type of conduct which is proscribed, since both "negligence" and "failure to exercise due care" are well-recognized concepts. Accordingly, the due process requirement of reasonably precise standards is satisfied.

2. The hearing examiner properly dismissed the first three counts on the bases of either the absence of testimony on the question of whether the autopsy was performed in an incompetent manner or the absence of expert testimony on whether either the autopsy or the report constituted a departure from accepted and prevailing practice, since proof of these allegations requires expert testimony. However, expert testimony was not required to establish that falsification of the autopsy report constituted negligence or failure to exercise due care, since it is within the province of a layperson to determine whether such an act constituted a failure to exercise due care.

Reversed.

1. ADMINISTRATIVE LAW — DUE PROCESS.

Substantive due process requires the existence of reasonably precise standards to be utilized by administrative agencies in the performance of their delegated legislative tasks; such standards must be as reasonably precise as the subject matter requires or permits.

2. PHYSICIANS AND SURGEONS — LICENSES — SUSPENSION OF LICENSE — DUE PROCESS — NEGLIGENCE.

The statute permitting the suspension of a license to practice medicine for "negligence or failure to exercise due care" is sufficiently specific to give notice of the type of conduct which is proscribed so as to afford substantive due process, since both "negligence" and "failure to exercise due care" are well-recognized legal concepts (MCL 333.16221[a]; MSA 14.15[16221][a]).

3. PHYSICIANS AND SURGEONS — LICENSES — NEGLIGENCE — EVIDENCE.

Expert testimony is not required to establish that the falsification

of an autopsy report by a physician constitutes negligence or failure to exercise due care, within the meaning of those terms as they are used in the statute setting forth the conditions which may lead to the suspension of a license to practice medicine (MCL 333.16221[a]; MSA 14.15[16221][a]).

*Robert S. Harrison & Associates* (by *Robert S. Harrison* and *Sara L. Caplan,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Sparks,* Assistant Attorney General, for defendant.

Before: Bronson, P.J., and J. H. Gillis and Allen, JJ.

Allen, J. Respondent, Michigan Department of Licensing and Regulation Board of Medicine, appeals as of right from an order of the Wayne County Circuit Court, which reversed the respondent's order suspending the license to practice medicine of petitioner, Robert J. Sillery. For the reasons that follow, we reverse the Wayne County Circuit Court and reinstate the Board of Medicine's initial order.

The suspension of petitioner's license arose out of an autopsy he performed in connection with a civil lawsuit against a drug manufacturer. The attorney for the plaintiffs in that litigation asked the petitioner to do a limited examination of the deceased in order to determine whether a lethal level of Darvon was present in her system. At all times pertinent hereto, petitioner was the Oakland County Medical Examiner. However, in this particular instance, he was hired in his private capacity.

A limited autopsy was actually performed by petitioner on April 23, 1979. However, he prepared an autopsy report which indicated that he had done a much more extensive examination. Specifi-

cally, the report indicated (1) that various body organs were removed and weighed although, in fact, they had not been, (2) that certain organs were examined although no such examinations were conducted, and (3) that petitioner had determined the thickness of the right ventricle although an incision necessary for such a determination had not been made. These misrepresentations were discovered by a pathologist who was hired by the drug manufacturer to do an independent autopsy. Based on the condition of the decedent's body, the pathologist hired by the drug manufacturer determined that plaintiff could not have done as thorough an examination as the report suggested.

Based on the inaccurate report, the Attorney General filed a complaint with the Board of Medicine on May 13, 1980, charging that plaintiff violated MCL 333.16221, subds (a) and (b)(i); MSA 14.15(16221), subds (a) and (b)(i), which provides:

"The department may investigate the activities of a licensee related to the licensee's practice of the health profession. The department may hold hearings, administer oaths, and order relevant testimony to be taken and shall report its findings to the appropriate board or appropriate task force. The board shall proceed under [MCL 333.16226; MSA 14.15(16226), which allows for discipline] when the board finds that any of the following grounds exist:

"(a) A violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees or other individuals, whether or not injury results, or any conduct, practice, or condition which impairs, or may impair, the ability to safely and skillfully practice the health profession.

"(b) Personal disqualifications, consisting of any of the following:

"(i) Incompetence."

Count I charged that, in performing an incompetent autopsy, plaintiff failed to conform to "minimal standards of acceptable and prevailing practice" in violation of subsection (b)(i). Count II charged that the falsification of findings constituted a departure from "minimal standards of acceptable and prevailing practice", in violation of subsection (b)(i). Count III charged that the failure to perform a competent autopsy violated subsection (a). Count IV charged that the falsification of findings in preparing the report violated subsection (a).

Following an administrative hearing, the hearing examiner dismissed Count I because the Attorney General had offered no evidence regarding what constituted a "competent" autopsy, and no testimony defining "minimal standards of acceptable and prevailing practice". There was also an absence of evidence showing that the autopsy performed was incompetent. Although petitioner did not discover the pulmonary embolism which the pathologist hired by the drug manufacturer determined to be the cause of death, petitioner competently performed the task for which he was employed, *i.e.*, he determined whether there was a lethal level of Darvon in the deceased's body. With respect to Count II, the hearing examiner dismissed it because, again, there had been "no testimony whatsoever as to what constitutes minimal standards of acceptable and prevailing practice" as they might relate to the authoring of autopsy reports. As to Count III, the hearing examiner dismissed it because of the absence of a showing that the autopsy was performed incompetently. However, he found that Count IV was substantiated, stating:

"It is unquestionable on this record that in fact [Dr.

Sillery] authored a report of an examination of a deceased that was inaccurate [and] contained information that could not be supported from the examination described by [petitioner]. Accordingly, such conduct would clearly constitute negligence or failure to exercise due care contrary to § 16221(a)."

The Wayne County Circuit Court reversed, holding that the standard pronounced in § 16221(a), *i.e.*, "negligence or failure to exercise due care", was not sufficiently precise to notify petitioner of the conduct proscribed. Accordingly, it found that petitioner's right to due process of law was violated.

Substantive due process requires that "reasonably precise standards be utilized by administrative agencies in the performance of delegated legislative tasks". *Krohn v Board of Medicine,* 98 Mich App 129, 133; 296 NW2d 57 (1980). "These standards must be as reasonably precise as the subject matter requires or permits." *State Board of Dentistry v Blumer,* 78 Mich App 679, 682; 261 NW2d 186 (1977). Reasonably precise standards "ensure that individuals are not held responsible by the state for conduct they could not reasonably understand to be proscribed", and guard against arbitrary and discriminatory enforcement. *Blumer, supra,* p 683.

We believe that the language of the standard "negligence or failure to exercise due care", is sufficiently specific to give notice of the type of conduct which is being proscribed. Negligence is a well-recognized legal concept which describes conduct that falls below a standard of reasonable or due care. See *Moning v Alfono,* 400 Mich 425, 443; 254 NW2d 759 (1977). A failure to exercise due care contemplates an abdication of responsibilities or carelessness in executing one's duties.

The circuit court intimated that the Board of Medicine must particularize all specific forms of negligence which will subject a physician to license restrictions. The court based this reasoning on the fact that the statute does specifically list other forms of proscribed conduct. However, we do not believe that it is either necessary or desirable that the statute, or rules promulgated thereunder, individually list all specific instances of negligence encompassed by this standard. Such a task would require an exhaustive enumeration of countless instances of conduct which obviously come within the purview of this standard. It might also enable a physician to escape regulation where he or she acts egregiously, but where, through oversight or the inability to articulate all possible forms of negligence, the board has not specifically covered a rare form of negligence. Substantive due process requires only that the standards be as reasonably precise as the subject matter requires or permits. We believe that "negligence and failure to exercise due care" is sufficiently precise, and that such subject matter is not realistically capable of exacting definitions. Accordingly, we believe that the circuit court erred in holding that the standard was vague and violative of plaintiff's right to due process of law.

We note that a standard similar to the one at issue was upheld at *DeHart v State Board of Registration in Podiatry,* 97 Mich App 307; 293 NW2d 806 (1980). In *Dehart,* the Court held that the standard of "willful and gross malpractice or willful and gross neglect in the practice of podiatry" was sufficient to inform a podiatrist of the type of conduct proscribed. Further, the Court cited to *Yoshizawa v Hewitt,* 52 F2d 411 (CA 9, 1931) with approval, where the court held that "gross carelessness" was not unconstitutionally

vague, as it "was synonymous with 'gross negligence' [a term which has] an ascertainable meaning to the medical profession as well as to the layman". See 97 Mich App 311.

We subscribe to *DeHart's* discussion of *Blumer, supra.* In *Blumer,* the Court held that the standard of "dishonorable and unprofessional conduct in the practice of dentistry" gave the Board of Dentistry unfettered discretion to determine what conduct would be proscribed. However, here the statutory basis for disciplinary action, "a violation of general duty, consisting of negligence or failure to exercise due care", with respect to acts "related to a licensee's practice of the health profession" is limited to negligence which occurs during the course of rendering professional services.

The circuit court also indicated that the standard was unconstitutional as applied to petitioner. Without expressly so stating, the court intimated that the standard was applied in an arbitrary manner. This was based on (1) the fact that the hearing examiner dismissed the three other counts against petitioner, and (2) the fact that there was no expert testimony on the question of whether petitioner was negligent or failed to exercise due care. We do not believe that the hearing examiner's dismissal of the other claims was inconsistent with his findings on Count IV or that it evinced arbitrary application of the standard recited in § 16221(a). Further, we do not believe that expert testimony was necessary to substantiate a finding of negligence or failure to exercise due care in this particular instance.

Count III was dismissed because there was no showing that the autopsy was performed in an incompetent manner. Counts I and II were dismissed because there was no expert testimony regarding "minimal standards of acceptable and

prevailing practice". Regardless of whether there were such showings, we do not believe that expert testimony was necessary to establish that a report laced with fictitious findings amounted to negligence or failure to exercise due care.[1] Where a professional's work product lacks such basic integrity as we believe that it is within the province of the layperson to determine that the conduct constitutes a failure to exercise due care. *Sullivan v Russell,* 417 Mich 398; 338 NW2d 181 (1983). Accordingly, the absence of testimony on what constituted "minimal standards of acceptable and prevailing practice" would not preclude a finding that plaintiff nonetheless failed to exercise due care.

Reversed.

---

[1] Petitioner argues that the standard of § 16221(a) did not apprise him that the intentional act of falsifying the document would be proscribed, as this provision recites only a negligence standard. This argument ignores the fact that intentional conduct may also be characterized by a factfinder as a failure to exercise due care.