THANGAVELU v DEPARTMENT OF LICENSING AND
REGULATION

Docket No. 82495. Submitted January 8, 1986, at Detroit.—Decided
March 3, 1986. Leave to appeal applied for.

Respondent, Department of Licensing and Regulation, State
Board of Medicine, revoked the license to practice medicine of
petitioner, Chelliah Thangavelu, M.D., because of unprofes-
sional and dishonest conduct in violation of the Medical Prac-
tice Act. The Wayne Circuit Court, Marriane O. Battani, J.,
affirmed the revocation of petitioner's license. Petitioner ap-
pealed, raising several issues. *Held:*

1. The board's decision to revoke petitioner's license was
based on competent, material and substantial evidence of peti-
tioner's conduct towards both complainants Forsman and May
which was established by testimony of the witnesses at a
hearing conducted by a hearing officer.

2. The hearing officer did not abuse his discretion in declin-
ing to allow the results of a polygraph examination of com-
plainant May. Generally, the results of polygraph examinations
are not admissible in civil and criminal trials. Even if the
Court of Appeals were to assume that the polygraph evidence
was admissible, it was clear to the Court that the results of a
polygraph examination are not conclusive and, in this case,
admitting the results of the polygraph examination would not
have changed the result.

3. The hearing officer did not place petitioner in double
jeopardy by refusing to apply the doctrine of collateral estoppel
to bar revocation of petitioner's license based on Forsman's
complaint. While petitioner may have been acquitted of crimi-
nal sexual conduct initiated by Forsman, and the issues in that

REFERENCES

Am Jur 2d, Administrative Law §§ 539-552.

Am Jur 2d, Evidence § 831.

Am Jur 2d, Licenses and Permits §§ 60-61.

Doctrine of res judicata or collateral estoppel as barring relitigation
in state criminal proceedings of issues prevously decided in
administrative proceedings. 30 ALR4th 856.

Physician's conviction of offense not directly related to medical
malpractice as ground of disciplinary action. 12 ALR3d 1213.

criminal trial and the hearing in this case may have over-lapped, collateral estoppel does not apply, since the purpose and the standard of proof required in a license revocation hearing are different from those in a criminal proceeding.

4. Petitioner's claim that the board's review of the hearings record denied him due process is without merit. The final order of the board states that the board reviewed the record made at the hearings and also amended the findings of the hearing officer. Therefore, the Court of Appeals concluded that the record adequately indicated that a majority of the members of the board read the hearings record, as required by statute, and no further proceedings were required.

5. Due process does not require the beyond a reasonable doubt standard of proof in license revocation hearings.

Affirmed.

1. ADMINISTRATIVE LAW — APPEAL — SUBSTANTIAL EVIDENCE TEST.

The applicable appellate standard to be applied in reviewing findings of fact made by a hearing officer in an administrative hearing is whether they are supported by competent, material and substantial evidence on the whole record.

2. ADMINISTRATIVE LAW — EVIDENCE — POLYGRAPH EXAMINATIONS — APPEAL.

The issue of whether the results of polygraph examinations should be admitted into evidence at administrative hearings has not been uniformly decided in Michigan; assuming such results are admissible, they do not have to be accepted as conclusive evidence; the Court of Appeals will not find a hearing officer to have abused his discretion in refusing to admit the results of a polygraph examination into evidence, where the results of a hearing would have been the same if the polygraph results were admitted.

3. LICENSES — LICENSE REVOCATION — COLLATERAL ESTOPPEL.

The doctrine of collateral estoppel does not apply to a revocation of license proceeding where the licensee has been acquitted of the same criminal charge upon which the revocation is based; criminal proceedings and license revocation proceedings have divergent purposes and standards of proof.

4. LICENSES — LICENSE REVOCATION — ADMINISTRATIVE PROCEDURES ACT — DUE PROCESS.

No further administrative proceedings are required to protect a medical practitioner's rights to due process when revoking his license where the final order of the State Board of Medicine

states that the board reviewed the record made at the administrative hearing and where the final order amends the findings of the hearing officer in detail (MCL 24.281; MSA 3.560[181]).

*Carl Ziemba,* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Sparks,* Assistant Attorney General, for respondent.

Before: T. M. BURNS, P.J., and BEASLEY and R. M. PAJTAS,* JJ.

BEASLEY, J. Petitioner-appellant, Chelliah Thangavelu, M.D., appeals from an order of the Wayne County Circuit Court which affirmed revocation of his license to practice medicine by the State Board of Medicine and Department of Licensing and Regulation. The revocation proceeding was started on October 19, 1977, by the Attorney General as a result of two incidents involving appellant and two married women who were his patients. The complaint alleged violations of § 11(1), (2)(h) and (i), and § 12(1) of the Medical Practice Act, which provide:

"Sec. 11. (1) * * * the board may revoke, suspend, place on probation, or reprimand the holder of a license or an approval to supervise a physician's assistant, or refuse to issue, renew, reregister, or reinstate a license or approval for unprofessional conduct.

"(2) * * * 'unprofessional and dishonest conduct' means any of the following: * * *

"(h) Lacking good moral character. * * *

"(i) A departure from, or the failure to conform to, minimal standards of acceptable and prevailing medical practice, whether or not actual injury to a patient is established. * * *

"Sec. 12. (1) "The board may revoke or suspend the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

license of a licensee who is convicted of a felony or misdemeanor in the course of his practice."[1]

Petitioner's license was revoked based on violations of § 11(1), (2)(h) and (i).

These administrative proceedings were held in abeyance due to a pending criminal action as a result of the complaint of one of the women, after which petitioner was convicted by a jury of criminal sexual conduct in the first degree. However, in *People v Thangavelu,*[2] this conviction was set aside by this Court and the case remanded for a new trial in which a jury returned a verdict of not guilty.

The administrative hearing resumed on February 25, 1983, at which time petitioner's motion to dismiss the portion of the complaint regarding the woman who had brought the criminal complaint based on a theory of collateral estoppel was denied on the ground that collateral estoppel did not apply to this case.

The hearing officer hearing the complaint made full findings of fact and law supporting the conclusion to revoke petitioner's license. Upon appeal, petitioner raises six issues.

First, petitioner claims that the board's decision in regard to the Forsman complaint was not supported by competent, material and substantial evidence on the whole record. With regard to the Forsman complaint, the hearing officer chose to believe the complaining woman who testified that petitioner touched her clitoris with his tongue because she saw him with his head directly over

[1] 1973 PA 185, as amended; MCL 338.1811 and 338.1812; MSA 14.542(11) and (12). The act has since been superseded by the Public Health Code, 1978 PA 368, as amended; MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.*

[2] 96 Mich App 442; 292 NW2d 227 (1980), *lv den* 410 Mich 865 (1980).

her vaginal area and felt the sensation of his tongue touching her, and because petitioner admitted that he made an inspection of her pubic hair. There was ample testimony upon which the hearing officer could base his findings. The applicable appellate standard to be applied in reviewing the findings of fact made by the hearing officer is whether they are supported by competent, material and substantial evidence on the whole record.[3] Such competent, material and substantial evidence was present.

Second, petitioner claims that the board's decision with regard to the May complaint was not supported by competent, material and substantial evidence on the whole record. Complainant testified that appellant diagnosed her as having hemorrhoids and treated them by inserting his finger in her rectum and massaging her rectum for twenty minutes. The hearing officer found that the act did occur and continued for "at least ten minutes". This complainant was examined by another doctor (Dr. Penn), who testified on deposition that Mrs. May did not have hemorrhoids, nor a cyst, nor was she pregnant. He also testified that a massage of her rectal area would be of no benefit whatsoever if she had hemorrhoids and, in fact, would result in a considerable amount of discomfort.

Petitioner claimed that this complainant had failed a polygraph test and that, as a result, no criminal complaint was issued. The hearing officer exercised his discretion and refused to admit the polygraph evidence.

The issue of whether the results of polygraph examinations should be admitted into evidence at

---

[3] *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974); *Ann Arbor Bank & Trust Co v Comm'r of the Financial Institutions Bureau,* 85 Mich App 131; 270 NW2d 725 (1978), *lv den* 405 Mich 832 (1979).

administrative hearings has not been uniformly decided in Michigan. In general, the decisions have held against admissibility of polygraph evidence at trial, both civil and criminal.[4]

In *Sponick v Detroit Police Dep't,*[5] while intimating that polygraph evidence is inadmissible in administrative hearings, we held that, even if admitted, it does not have to be accepted as conclusive evidence.

In *People v Barbara,*[6] the Supreme Court stated that although a polygraph is occasionally used as an investigative tool by prosecutors, the differences between use as an investigative and as an evidentiary device are great, and a technique accepted for one limited purpose may not yet be suitable for use in the other.

In *MSEA v Civil Service Comm,*[7] petitioner, an intake worker, was discharged from the Department of Social Services for misconduct constituting a crime. Evidence that a complaining witness had taken and passed a polygraph examination was admitted into evidence by the hearing officer. While finding it unnecessary to address the issue of whether such evidence is properly admissible in administrative hearings, we stated that results of polygraph examinations are normally not admissible.

Finally, in *Gilliard v Dep't of Social Services,*[8] where the DSS argued that the arbitrator in an administrative hearing committed error by exclud-

---

[4] *People v Barbara,* 400 Mich 352, 364; 255 NW2d 171 (1977); *People v Frechett,* 380 Mich 64, 68; 155 NW2d 830 (1968); *Stone v Earp,* 331 Mich 606; 50 NW2d 172 (1951).

[5] 49 Mich App 162, 190-191; 211 NW2d 674 (1973).

[6] *Barbara, supra,* p 403.

[7] 126 Mich App 797, 805; 338 NW2d 220 (1983), *lv den* 419 Mich 958 (1984).

[8] 135 Mich App 579, 585; 354 NW2d 263 (1982).

ing evidence of a polygraph examination taken by one of their witnesses, we stated:

"We disagree. Subject to one carefully drawn exception (which is inapplicable to the case at bar), Michigan courts have consistently held that the results of polygraph examinations are inadmissible. See, *e.g., People v Liddell,* 63 Mich App 491; 234 NW2d 669 (1975)." (Footnote omitted.)

In the within case, the hearing officer declined to allow Mrs. May's polygraphs into evidence, but permitted a separate record. Even if we were to assume that the polygraph evidence was admissible, it is clear that the results of a polygraph examination are not conclusive.[9] We do not believe that the hearing officer abused his discretion by refusing to admit into evidence the results of polygraph examinations administered to Mrs. May. In addition, we do not believe that admitting the polygraph test into evidence would have changed the result.

Next, petitioner claimed that he was placed in double jeopardy as a result of the hearing officer's refusal to apply the principle of collateral estoppel to bar the administrative proceeding on the Forsman complaint. Petitioner reasons that the jury acquittal in his second trial for criminal sexual conduct constituted a finding that he had not committed an act of cunnilingus upon that complainant. He says that this jury verdict operated to apply the doctrine of collateral estoppel in this case where the medical licensing board attempted to use this same act of cunnilingus as part of the grounds for revocation of petitioner's medical license. The medical licensing board says flatly that the doctrine of collateral estoppel does not apply

[9] See *People v Barbara, supra; Sponick, supra.*

to a revocation of license proceeding where the licensee has been acquitted of the same criminal charge upon which the revocation is based.

In holding that the doctrine of collateral estoppel was not applicable, the hearing officer said:

"The issue decided in the criminal case dealt with a determination of whether Respondent violated a criminal statute, while the issue to be decided in the case at bar is a determination of whether Respondent had violated the licensing statute. The types of proof necessitated by the state in establishing its case is totally different since in the licensing statute a finding is made as to whether Respondent diverged from any of the requirements of the licensing statute or did certain acts which would permit the Board to take action against his license. The fact that Respondent was acquitted in the criminal trial is not dispositive of the issue of his licensing status. Even if Karen Forsman's testimony did not establish that Respondent was 'guilty beyond a reasonable doubt,' the same testimony may be taken in the licensing proceeding since the issue is different and the standard of proof is by a 'preponderance of the evidence'."

Finding that an administrative proceeding is not criminal in nature, "though the result of such a hearing can be devastating to the petitioner", the trial judge agreed with the hearing officer.

The complaint in this case alleged violations of § 11(1), (2)(h) and (2)(i), and § 12(1) of the Medical Practice Act, while the criminal statutes which plaintiff was found not guilty of violating in the criminal trial were MCL 750.520(a)-(e); MSA 28.788(1)-(5).

The double jeopardy clause found in the Fifth Amendment of the United States Constitution and in Article 1, § 15 of the 1963 Michigan Constitution protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prose-

cution for the same offense after conviction; and (3) multiple punishments for the same offense.[10]

In *People v Watt*,[11] in discussing the doctrine of collateral estoppel when determining whether it applied to bar relitigation of issues previously decided by a hearing officer in subsequent criminal proceedings, we said:

"In *Topps-Toeller, Inc v Lansing* [47 Mich App 720, 727; 209 NW2d 843 (1973)], this Court defined collateral estoppel as follows:

" 'Collateral estoppel bars the relitigation of issues previously decided when such issues are raised in a subsequent suit by the same parties based upon a different cause of action.'

"In *Topps,* we cited *People ex rel Director of Conservation v Babcock* [38 Mich App 336, 346; 196 NW2d 489 (1972)] to describe collateral estoppel as follows:

" 'When the subsequent action is based on a new cause of action, the prior litigation is conclusive only as to issues actually litigated. This is the doctrine of collateral estoppel.' (Citations omitted.)."

In *Watt,* where we reversed the defendant's conviction, we held that the doctrine of collateral estoppel permitted findings made at an administrative proceeding to be applied to a subsequent criminal proceeding on the same issue, reasoning that the burden of proof in the criminal case, guilt beyond a reasonable doubt, is greater than the preponderance of the evidence burden of proof in

---

[10] *People v Baskin,* 145 Mich App 526; 378 NW2d 535 (1985); *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984), citing *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

[11] 115 Mich App 172, 175; 320 NW2d 333 (1982), lv den 413 Mich 926 (1982). See, also, *People v Ward,* 133 Mich App 344; 351 NW2d 208 (1984), lv den 422 Mich 973 (1985); *LaVergne v Community Nat'l Bank of Pontiac,* 132 Mich App 387; 347 NW2d 463 (1984); *State ex rel Macomb County Prosecuting Attorney v Mesk,* 123 Mich App 111; 333 NW2d 184 (1983), lv den 417 Mich 1031 (1983).

the administrative hearing, and since the hearing officer's findings had been made under the lesser degree of proof, his decision was binding in the criminal trial where the degree of proof was of a greater magnitude.

In contrast, in the within case, petitioner sought to use a prior favorable criminal disposition to preclude the Forsman complaint from the administrative proceedings. From *Watt* it may be argued that acquittal of criminal charges does not necessarily bar an administrative revocation proceeding based on the same issues, since a lesser degree of proof is utilized in the latter when making findings of fact.

In addition to the difference in the degrees of proof required, although the issues involved in the administrative hearing and the criminal proceeding may overlap, the purpose of a revocation proceeding substantially differs from a criminal proceeding. The hearing examiner discussed the remedial nature of revocation proceedings, stating:

"These two cases, when taken together, stand for the proposition that an administrative proceeding against a licensee is a different cause of action than a criminal proceeding against the same licensee, even if based on the same facts which resulted in acquittal of licensee in the criminal case. This is apparent when the statutes in question are compared since the licensing statute is for the protection of the public at large. As the Appellate Court of Illinois stated in *Kaplan v Dep't of Registration & Education*, [46 Ill App 3d 968] 361 NE2d 626, 631 (1977): '* * * The practice of medicine, in addition to skill and knowledge, requires honesty and integrity of the highest degree, and inherent in the State's power is the right to revoke the license of those who violate the standards it sets.' This revocation proceeding is not a second criminal proceeding placing the physician in double jeopardy. Rather, the purpose is to maintain sound, professional standards of conduct for the purpose

of protecting the public and the standing of the medical profession in the eye of the public."[12]

We find no error in refusing to apply the doctrine of collateral estoppel in this case.

Petitioner next claims that he was denied due process by the board's review of the record. He contends that only two hearing officers heard testimony in this case and that the final order of the board did not indicate that a majority of the members of the board actually read the record in reaching their decision. Thus, he claims that further proceedings were required under § 81 of the Administrative Procedures Act of 1969, which provides:

"When the official or a majority of the officials of the agency who are to make a final decision have not heard a contested case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision is served on the parties, and an opportunity is given to each party adversely affected to file exceptions and present written arguments to the officials who are to make the decision. Oral argument may be permitted with consent of the agency." MCL 24.281(1); MSA 3.560(181)(1).

We believe petitioner's claim is wholly without merit.[13] The final order of the board states that the board reviewed the record made at the administrative hearings. In addition, the final order of the board amended the findings of the hearing officer in detail. Therefore, we conclude that the record

[12] *Younge v State Board of Registration for Healing Arts,* 451 SW2d 346 (Mo, 1969), *cert den* 397 US 922; 90 S Ct 910; 25 L Ed 2d 102 (1970); *Helvering v Mitchell,* 303 US 391; 58 S Ct 630; 82 L Ed 917 (1937).

[13] See *Dehart v Board of Registration in Podiatry,* 97 Mich App 307, 316; 293 NW2d 806 (1980).

adequately indicates that a majority of the members of the board read the administrative record as required by the statute, and no further proceedings were required under MCL 24.281; MSA 3.560(181).

Last, petitioner claims that constitutional due process requires that the "beyond a reasonable doubt" standard be applied in license revocation hearings. *MSEA v Civil Service Comm, supra,* and *Rucker v Board of Medicine,*[14] hold otherwise. We are not persuaded that a change is desirable.

Affirmed.

[14] 138 Mich App 209; 360 NW2d 154 (1984).