*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* OMAR ZAKI, D.D.S.

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

      Petitioner-Appellee,

v

OMAR ZAKI, D.D.S.,

      Respondent-Appellant.

UNPUBLISHED
July 10, 2025
1:13 PM

No. 369987
Board of Dentistry
LC No. 22-048145

Before: O'BRIEN, P.J., and M. J. KELLY and KOROBKIN, JJ.

PER CURIAM.

Respondent, Omar Zaki, D.D.S., appeals by right a final order issued by the Michigan Board of Dentistry's Disciplinary Subcommittee (DSC), which found that respondent violated MCL 333.16221(a) (negligence or failure to exercise due care) and (b)(*i*) (incompetence). We affirm.

## I. BACKGROUND AND FACTS

Respondent, a licensed dentist who graduated from dental school in 2019, treated a minor child, HT, for a routine dental cleaning in 2021 during which he found two cavities in "teeth #J and #T." He attempted to perform an x-ray on the teeth but was unsuccessful because the x-ray equipment caused HT to gag. He testified that he referred HT to a pediatric dentist; however, respondent's clinical notes did not mention a referral for this appointment, and HT's mother did not take HT to another dentist.

-1-

At a follow-up appointment to address the cavities, respondent attempted to perform two pulpotomies on teeth J and T.[1] Respondent's clinical notes from this appointment stated that he "removed coronal pulp tissue for #J, T," applied "formecrosol," achieved "hemostasis," and that there were "no complications, no issues." Further, the notes stated that HT became uncooperative "with tooth #T restoration" and that HT's mother was "advised to bring patient back to redo composite on #T." No x-rays were taken after the procedure, but respondent asserted that he had unsuccessfully attempted to take them.

HT and her mother returned approximately one week later to finish sealing the cavity. Respondent's clinical notes for this appointment provided:

> last time, patient was very not [sic] cooperative so i wasnt able to finish the filling, the filling was underfilled, so i notified the mother that the tooth was sealed good, preventing any infection but was underfilled due to patient not cooperating.

> patient came today and we added more to the filling, no LA was given, just etch, bond, composite.

Again, respondent did not take successful x-rays.

After this appointment, according to her mother, HT began experiencing headaches, refused to brush her teeth, and ate less than normal. More than a month later, her mother returned to the dental office in person to discuss HT's symptoms and request x-rays. Respondent's clinical notes for this appointment provided:

> Patients mother asked about what was done last time even though she was in the room at that time and treatment was explained to her.

> patient was not cooperative and started moving and cried alot [sic] during the appointment, explained to the mother that she needs to be referred to pedo to finish the pulpotomy but because of insurance [sic] problems and her not having coverage if her daughter was referred to pedo i tried to help and get the kid out of pain. pulpotomy was performed on T, i was able to seal the tooth, and close it despite patient not being cooperative at all, i was not able to complete the full composite afterwards, suggested pedo refferal [sic] again and mother refused once again because of financial reasons, i offered to have [the child] come back at a different day so i can finish the filling and i did . . . .

> patient arrived today with father, we were finally able to take an xray on T, the pulpotomy needs to be finished on T, offered father a copy of the xrays to take to a pediatric dentist . . . .

---

[1] A pulpotomy is a dental procedure that is used when decay has entered the tooth nerve where the "pulp" resides. The procedure, typically done on children, removes the remaining pupal tissue and is filled in with sterile material that can be sealed, which often allows the tooth to survive.

No treatment performed, patient was dismissed in good condition.

Although an x-ray was taken of tooth T, none were taken of tooth J because, according to respondent, HT had no complaints about tooth J.

HT's mother brought her to another dentist, Dr. Jason M. Golnick, who performed x-rays on both teeth. He found an abscess next to tooth J and recommended extraction as the only option. He ultimately extracted tooth J, tooth T, and a third tooth—tooth K. HT's mother later submitted a complaint against respondent, and petitioner initiated this action, alleging violations of MCL 333.16221(a) and (b)(*i*) for his failure to take x-rays, to complete the pulpotomies, and to retain documentation of the referrals made to HT's mother.

Several witnesses testified at an evidentiary hearing before an administrative law judge (ALJ). Dr. Michael D. Jennings, petitioner's expert, testified that x-rays were an important component for a dentist to use in order to assess the status of a tooth, how deep the decay went, and whether there were any complications from a pulpotomy. He testified that the standard of care required such x-rays. Moreover, he explained that, because of the x-ray respondent eventually took of tooth T, it was clear that there was still pupal tissue, which indicated an incomplete pulpotomy. He testified that once it was determined that the pulpotomy of tooth T was incomplete, respondent should have taken an x-ray of tooth J to assess whether that pulpotomy was successful. He also examined Dr. Golnick's x-rays and explained that this showed that the pulpotomy of tooth J was incomplete even though respondent's records indicated it had been complete. Dr. Jennings testified that the pulpotomies were incomplete from the outset and opined that respondent's conduct in failing to take x-rays and failing to complete the pulpotomies fell below the requisite standard of care.

In contrast, Dr. Michael Frank Jermov, respondent's expert, testified that x-rays, while helpful, were not required and that it was permissible to treat decay without them. While he acknowledged that the depth of the decay could not be determined without an x-ray, he explained that "you can make an estimated guess based upon your knowledge and experience." Additionally, he opined that attempting to refer an uncooperating patient met the standard of care, which respondent had done in this case. During cross-examination, the prosecution impeached Dr. Jermov's testimony with a prior discipline action against his license for failing to use x-rays.

Regarding respondent's failure to maintain records of the referrals, Dr. Jennings testified that the records for this case gave no indication that referrals to a pediatric dentist were made. He explained that keeping copies of such referrals in a patient's chart was important because patients would sometimes lose their referrals. While he acknowledged that Michigan's state regulation on dental treatment records, Mich Admin Code, R 338.11120, did not explicitly require referrals to be placed in a patient's chart, he maintained that "your record should be a . . . written representation of what actually happened." He opined that respondent's failure to maintain referral records in the child's chart fell below the standard of care. In contrast, Dr. Jermov indicated that it was sufficient to verbally give a patient a referral without keeping written copies in the chart.

Following the hearing, the ALJ entered a proposal for decision, concluding that, by a preponderance of the evidence, respondent's conduct fell below the standard of care by (1) failing to take x-rays, (2) failing to complete the pulpotomies, and (3) failing to maintain copies of the

referrals in the child's chart. Respondent filed exceptions to the ALJ's proposal for decision, but the DSC denied them and issued a final order accepting the ALJ's proposal for decision. For violating MCL 333.16221(a) and (b)(*i*), the DSC ordered that respondent be placed on probation for a minimum of one day, not to exceed six months, during which he must complete 12 hours of continuing education, comply with the Public Health Code, MCL 333.1101 *et seq*., and pay a fine of $2,500.

Respondent now appeals.

## II. STANDARD OF REVIEW

"Rulings by disciplinary boards or subcommittees are reviewed on appeal solely under Const 1963, art 6, § 28." *In re Sangster*, 340 Mich App 60, 66; 985 NW2d 245 (2022). Const 1963, art 6, § 28 provides that a court's review of an agency decision is limited to determining whether the agency action was authorized by law and whether the agency's findings of fact are "supported by competent, material and substantial evidence on the whole record." " 'Substantial evidence' means evidence that a reasonable person would find acceptably sufficient to support a conclusion," and while "[t]his may be substantially less than a preponderance of evidence," it "require[s] more than a scintilla of evidence." *Sangster*, 340 Mich App at 67. "This Court must review the entire record, not just the portions that support an agency's findings." *Id*. Additionally, we "must generally defer to an agency's administrative expertise." *Id*. (quotation marks and citation omitted). We "may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by evidence on the record or because the court might have reached a different result." *Dep't of Community Health v Risch*, 274 Mich App 365, 373; 733 NW2d 403 (2007).

## III. ANALYSIS

Respondent argues that the ALJ's decision was not supported by competent, material, and substantial evidence on the whole record. We disagree.

As stated previously, the DSC determined that respondent violated MCL 333.16221(a) and (b)(*i*). MCL 333.16221 provides, in relevant part:

[T]he department shall investigate any allegation that 1 or more of the grounds for disciplinary subcommittee action under this section exist, and may investigate activities related to the practice of a health profession by a licensee, a registrant, or an applicant for licensure or registration. The department may hold hearings, administer oaths, and order the taking of relevant testimony. After its investigation, the department shall provide a copy of the administrative complaint to the appropriate disciplinary subcommittee. The disciplinary subcommittee shall proceed under section 16226 if it finds that 1 or more of the following grounds exist:

(a) Except as otherwise specifically provided in this section, a violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may

impair, the ability to safely and skillfully engage in the practice of the health profession.

> (b) Personal disqualifications, consisting of 1 or more of the following:

> (*i*) Incompetence.

" 'Incompetence' means a departure from, or failure to conform to, minimal standards of acceptable and prevailing practice for a health profession, whether or not actual injury to an individual occurs." MCL 333.16106(1).

## A. FAILURE TO TAKE X-RAYS

Respondent first argues that the ALJ's findings regarding his failure to take x-rays were infected by "youth bias," pointing to the ALJ's statement that "[w]hile Dr. Jermov has been in practice for 40 years, Respondent was only in practice two years at the time of treatment."[2] However, context reveals that the ALJ was merely highlighting why the testimony of Dr. Jermov, respondent's expert, was being given less weight than that of Dr. Jennings, petitioner's expert. While Dr. Jennings opined that the standard of care required x-rays to treat decay, Dr. Jermov testified that without x-rays a dentist could "make an estimated guess based upon . . . knowledge and experience." The ALJ did not focus on respondent's age, and indeed never mentioned his age in her decision. Instead, the ALJ focused on respondent's *experience*, which was far less than Dr. Jermov's. Respondent had been practicing dentistry for only two years, demonstrating that he likely had far less of the experience that even Dr. Jermov said would be necessary to treat decay without the benefit of x-rays. Accordingly, there was no error in the ALJ's determination that respondent lacked the experience necessary to evaluate the depth of decay without an x-ray.

In addition to evidence of respondent's lack of experience, the ALJ relied on Dr. Jennings's testimony about the necessity of x-rays before pulpotomies in her determination. Although respondent asserted that he had attempted x-rays, the ALJ found that he should not have begun the pulpotomies without x-rays but that he should have immediately referred the child to a pediatric dentist who could have taken such x-rays. This was supported by Dr. Jennings's testimony that the standard of care required respondent to refer to a pediatric dentist if he had difficulty treating a child patient. Therefore, the ALJ did not exhibit youth bias and her findings regarding respondent's lack of experience and the x-rays were amply supported by the record.

---

[2] We note that respondent failed to raise this argument in his exceptions to the proposal for decision. "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Nonetheless, this Court may address an unpreserved issue "if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id.* at 289-290 (quotation marks and citation omitted). Here, respondent's argument involves a question of law with all necessary facts presented. Therefore, we exercise our discretion to address it.

## B. INCOMPLETE PULPOTOMIES

Respondent next argues that he never claimed to have completed pulpotomies. Instead, he maintains that he was unable to complete them because of HT's lack of cooperation and that her mother refused to accept his referrals. However, the ALJ did not find credible respondent's explanation that he had known all along that the pulpotomies were incomplete and that a specialist should finish them. In doing so, the ALJ relied on the clinical notes and Dr. Jennings's testimony. The evidence amply supported these findings. For example, the clinical notes for the first appointment indicated that the pulpotomies were successful. The notes stated, "no complications, no issues," and Dr. Jennings testified that these notes indicated that the pulpotomies were complete even though the evidence supports that the pulpotomies were clearly incomplete.

Similarly, the clinical notes for the second appointment gave no indication that the pulpotomies were incomplete. The notes referenced only the filling for tooth T, not the pulpotomies themselves, stating that "the tooth was sealed good, preventing any infection." It was not until the third visit that respondent recorded any written indication that the pulpotomies were incomplete: "we were finally able to take an xray on T, the pulpotomy needs to be finished on T." However, this addressed only the pulpotomy for tooth T, not tooth J. Respondent testified that he did not x-ray tooth J because the child did not complain about that tooth, but Dr. Jennings explained that as soon as respondent determined the pulpotomy for tooth T was incomplete that he should have also x-rayed tooth J to ensure that the procedure was successful.

Given that the ALJ's findings that respondent had known that the pulpotomies were incomplete were amply supported by the record, we defer to the ALJ's credibility determination because when "administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence." *Risch*, 274 Mich App at 372.

## C. FAILURE TO MAINTAIN RECORDS OF PATIENT REFERRALS

Finally, respondent argues that he did not violate the Public Health Code because Rule 338.11120, which governs the requirements of dental treatment records, does not expressly require him to keep copies of patient referrals. Although it is true that the administrative rule is silent on this point, petitioner did not allege that respondent violated Rule 338.11120. Instead, the ALJ considered the language of Rule 338.11120 in her analysis of whether respondent's omission of the referrals from the patient's chart provided "a factual basis for a violation" under MCL 333.16221(a) and (b)(*i*). In her determination, the ALJ relied on Dr. Jennings's testimony that the standard of care required such records to be kept and that the record shows that respondent failed to maintain such records. The ALJ permissibly credited such testimony over that of Dr. Jermov.

We disagree with respondent's argument that the *expressio unius* negative-implication maxim should lead us to conclude, as a matter of law, that Rule 338.11120's silence on the issue of maintaining records of referrals means that failure to maintain such records cannot violate the standard of care under MCL 333.16221(a). A licensed healthcare professional can violate the Public Health Code by failing to exercise due care *or* by violating an administrative rule, see MCL

-6-

333.16221(a), (h), and there is no indication that the Legislature intended to shield licensees from accountability under MCL 333.16221(a) by authorizing the enumeration of more specific violations in the Administrative Code.

Respondent additionally argues that the DSC's order violates his substantive due-process rights because Rule 338.11120 is silent on the issue of maintaining referrals in patients' charts and thus fails to provide adequate notice that doing so is required. This argument, too, is unpersuasive because, again, respondent is not accused of violating Rule 338.11120; rather, respondent's discipline was for failure to comply with the standard of care as required by MCL 333.16221. In *Dep't of State Compliance & Rules Division v Mich Ed Ass'n-NEA*, 251 Mich App 110, 121-122; 650 NW2d 120 (2002), citing *Sillery v Bd of Med*, 145 Mich App 681, 687; 378 NW2d 570 (1985), we recognized that the standard stated in MCL 333.16221 is sufficiently precise as to comply with substantive due process. This is, therefore, not a case in which respondent was subject to discipline "for conduct that [he] could not reasonably understand to be proscribed." *Dep't of State Compliance*, 251 Mich App at 116. Consequently, the ALJ did not err in determining that respondent violated the standard of care by failing to maintain copies of referrals in the HT's chart.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Daniel S. Korobkin