# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DESHAWN LAPRENCE LANDERS,

Defendant-Appellant.

UNPUBLISHED
April 10, 2018

No. 336698
Wayne Circuit Court
LC No. 16-007517-01-FH

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of fourth-degree arson, MCL 750.75(1)(a)(*i*), and malicious destruction of personal property ($1,000 or more but less than $20,000) ("malicious destruction of personal property"), MCL 750.377a(1)(b)(*i*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 58 to 240 months' imprisonment for each of his convictions. We affirm.

Defendant contends that there was insufficient evidence presented at trial to sustain his convictions. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). The evidence must be viewed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the prosecution proved all essential elements of the crime were proved beyond a reasonable doubt. *Id.* at 377-378. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Consequently, this Court must resolve all conflicts in the evidence in favor of the prosecution. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Defendant first contends that the prosecution presented insufficient evidence during trial identifying him as the perpetrator of the arson of Angelisa Greene's automobile. Defendant's contention is without merit.

-1-

The identity of the perpetrator "is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). But like all elements of a crime, it may be satisfactorily proved by circumstantial evidence and reasonable inferences that arise from such evidence. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

During trial, Greene testified that, on the night of the fire, she heard a "woooosh [sic]" sound, and in response, she looked out of her home's window and saw defendant running from the side of her automobile. She explained that defendant then entered a white automobile while her automobile was on fire. While Greene admitted that there were no lights on outside when she saw defendant and that she only saw defendant's back, Greene unequivocally testified that she knew that the person she saw was defendant. Greene testified that she and defendant had "been together for two years," and during cross-examination, Greene confirmed that she had been in "an intimate romantic relationship" with defendant.

Moreover, Greene testified that a few days before the fire, she and defendant got into a fight that resulted in defendant's throwing Hennessey in her face, Greene's punching defendant twice in the nose, and defendant's punching Greene in the eye. As a result of their fight, Greene filed a report with the Detroit Police, and subsequently Greene's mother, Felicia Greene ("Felicia"), contacted defendant's probation officer. At some point before the fire, defendant sent Greene a number of text messages wherein defendant mentioned that Greene's mother called a "p.o. number," and he told Greene, " 'it's cool pay back [sic] coming soon,' " and " 'its [sic] cool doe [sic] pay back [sic] on everybody. . . .'"

Therefore, there was ample evidence for the jury to conclude that defendant started the fire in Greene's automobile. While Greene did not see defendant's face, she unequivocally identified defendant as the person whom she saw running from her automobile before the fire began. Greene had known defendant for at least two years. It was within the province of the jury to determine the credibility of Greene's identification of defendant. Moreover, defendant's fight with Greene, Greene's subsequent filing of a police report relating to that incident, Felicia's contact with defendant's parole officer, and defendant's text messages to Greene all support an inference that defendant burned Greene's automobile in retaliation for those acts.

Next, defendant argues that the prosecution presented insufficient evidence that Greene's automobile had a value of at least $1,000. Defendant's argument fails.

During trial, Greene testified that she had purchased her automobile, a 1999 Buick LeSabre, for $1,100 a few months before the fire. However, she explained that at the time of the fire, her automobile's "brake line went out" and that she had been in the process of getting it repaired. When Detroit Fire Department Lieutenant Theodore Copley investigated the fire, he concluded that the damage to "the vehicle" rendered it "a total loss." Lieutenant Copley explained that he "did a blue book analysis through CBD.com," and that analysis "valued the car at -- in good condition at sixteen hundred dollars at the time of the incident." He confirmed that was the automobile's fair market value.

Defendant argues that there was insufficient evidence of the automobile's value and that there was no foundation for Lieutenant Copley's testimony regarding the value of the automobile. In support of his argument, defendant presents evidence on appeal in support of his

own "Blue Book" valuation of Greene's automobile. Yet, defendant failed to present any evidence related to the value of the automobile during trial. Therefore, this Court will not consider defendant's evidence "because it is impermissible to expand the record on appeal." *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

Regardless, there was sufficient evidence for the jury to determine that automobile had a value of at least $1,000. Greene testified that she paid $1,100 for the automobile a few months before the fire, and Lieutenant Copley testified that the automobile had a value of $1,600 at the time of the fire based on a "blue book analysis." The jury was free to accept or reject Greene's and Lieutenant Copley's testimony relating to the value of the automobile. Defendant's failure to present his own evidence relating to the value of the automobile nullifies neither Greene's nor Lieutenant Copley's testimony.

And finally, defendant asserts that the trial court "found that the evidence of the value of the vehicle was insufficient" during defendant's probation violation hearing, a hearing that was held by the trial court while the jury deliberated and in which the trial court considered the same evidence that the parties presented during trial. Defendant's assertion is at odds with the trial court's earlier denial of defendant's motion for a directed verdict, where the trial court specifically found that "a rational tier of fact could find beyond a reasonable doubt that [defendant] caused the fire in the car with the use of gasoline and whatever he used to ignite it, that the car was burnt and damaged and it's [sic] value was greater than a thousand dollars . . . ." Moreover, while the trial court found during the probation violation hearing that the prosecution had not proved that the value of Greene's automobile was at least $1,000 by a preponderance of the evidence, the trial court's factual findings did not, in any way, restrain the jury from making their own factual finding as to the value of Greene's automobile.

Defendant argues that collateral estoppel should operate here and bar his convictions based on the trial court's finding during his probation violation hearing that Greene's automobile had a value of less than $1,000. We disagree.

"To preserve appellate review of a double jeopardy violation, a defendant must object at the trial court level." *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015). Defendant did not raise any objection in the trial court on the grounds of double jeopardy via collateral estoppel. Therefore, this issue is unpreserved.

This Court reviews unpreserved issues, constitutional and non-constitutional, for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred; the error was plain, and the plain error affected substantial rights. *Id*. at 763. "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015). "This Court reviews de novo the application of a legal doctrine, including collateral estoppel." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

Collateral estoppel "stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any

future lawsuit." *Ashe v Swenson*, 397 US 436, 443; 90 S Ct 1189; 25 L Ed 2d 469 (1970). Collateral estoppel is also known as " 'issue preclusion.' " *People v Johnson*, 191 Mich App 222, 224; 477 NW2d 426 (1991), citing 1 Restatement Judgments, 2d, § 27, p 250.

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined." *People v Gates*, 434 Mich 146, 154; 452 NW2d 627 (1990). In the context of the criminal law, collateral estoppel is "embodied in the Fifth Amendment guarantee against double jeopardy," and that "whatever else that constitutional guarantee may embrace, it surely protects a man who has been acquitted from having to 'run the gantlet' a second time." *Ashe*, 397 US at 445-446 (citations omitted).

As this Court has observed, "courts of this state have explained that where the purposes of the two proceedings are fundamentally different, applying the rule of issue preclusion to issues common to both proceedings can be inappropriate." *Johnson*, 191 Mich App at 225, citing *Gates*, 434 Mich at 161-163, and *Thangavelu v Dep't of Licensing & Regulation*, 149 Mich App 546, 555-556; 386 NW2d 584 (1986). Specifically, in *Gates*, the Michigan Supreme Court held that "the purposes of a child-protective proceeding and a criminal proceeding are so fundamentally different that application in this instance of collateral estoppel would be contrary to sound public policy." *Gates*, 434 Mich at 161.

Probation violation hearings in Michigan "are summary and informal and are not subject to the rules of evidence or of pleadings applicable in a criminal trial. The scope of these proceedings is limited, and the full panoply of constitutional rights applicable in a criminal trial do not attach." *Johnson*, 191 Mich App at 225 (citations omitted). The focus of a probation violation hearing "is on whether one who has already been convicted of a crime violated a term of probation, and whether probation should be revoked." *Id*. at 225-226. If a judge finds that a probationer has violated the terms of his probation, "the probationer is neither burdened with a new conviction nor exposed to punishment other than that to which he was already exposed as a result of the previous conviction for which he is on probation." *Id*. at 226.

In this case, while the jury deliberated, the trial court held a probation violation hearing for defendant and considered the same evidence that was presented during trial. At the outset of the probation violation hearing, the trial court noted that defendant was on probation for two separate convictions in two separate cases. After hearing the parties' arguments, the trial court found by a preponderance of the evidence that defendant committed an "assault and battery, [and] in this case a domestic violence" against Greene when defendant struck Greene during their fight. Similarly, the trial court found that defendant had "intentionally committed an act that created a very high risk of burning" Greene's home when defendant set Greene's automobile on fire, and, therefore, it found that defendant had committed second-degree arson.

However, the trial court was "not convinced by a preponderance of the evidence that [Greene's automobile] was worth more than a thousand dollars -- a thousand dollars or more" because the automobile was "being repaired for brakes," and the automobile "was on the wheels, [it] had been jacked up and can you [sic] see in the picture at least the front end of the car was sitting on the wheel sideways." Therefore, the trial court did not find that defendant had committed fourth-degree arson. The trial court noted that the automobile "had some value"

when it found that defendant had committed malicious destruction of personal property, but it did not specify the precise subsection of that statute that defendant had violated. Ultimately, the trial court found that defendant was "guilty of violating his probation in both of these cases . . . ."

Defendant contends that during the probation violation hearing, the trial court found that "the state's evidence was legally insufficient to sustain a conviction of" fourth-degree arson and malicious destruction of personal property, that the trial court's findings constituted an "an acquittal and a 'merits ruling' that should have absolutely concluded the proceedings related to those counts." Therefore, defendant asserts that his convictions should be vacated due to collateral estoppel. Defendant's contentions have no merit.

At the outset, defendant correctly notes that in *Johnson*, this Court held that the "threshold requirements" of collateral estoppel had been met in the context of a probation violation hearing and a subsequent criminal trial that concerned the same alleged conduct. *Johnson*, 191 Mich App at 224-225. But this Court held that "applying the general rule of issue preclusion in [that] case [was] inappropriate," because,

> the quality and extensiveness of the procedures followed in a criminal trial are much greater than those followed in a probation violation hearing. The purposes of the proceedings, moreover, are distinct. Because of the limited nature and scope of a probation violation hearing, as a practical matter the prosecutor may not present all the evidence bearing on the commission of the alleged offense. The determination whether one committed an offense for the purpose of a new conviction should be made in a criminal trial, which is the intended forum for such a determination, and not in an informal, summary proceeding. The principles of collateral estoppel, therefore, should not be permitted to preclude such a determination following a probation violation decision adverse to the people. [*Id*. at 226.]

Defendant focuses his attention on the portion of this Court's opinion in *Johnson* noting that the quality and extensiveness of procedures differ between criminal trials and that a prosecutor may not be able to present all of the relevant evidence relating to the alleged conduct during a probation hearing. Therefore, defendant contends that because the trial court considered the same evidence that was presented during trial during his probation violating hearing, this Court should disregard *Johnson* and hold that collateral estoppel should bar his convictions based on the trial court's finding that Greene's automobile had a value of less than $1,000. Yet, defendant disregards that in *Johnson*, this Court also held that the "purposes of the proceedings, moreover, are distinct" and that "[t]he determination whether one committed an offense for the purpose of a new conviction should be made in a criminal trial[.]" *Id*. at 226. As the purpose of a probation violation hearing and a criminal trial remain distinct, defendant fails to present a reason why this Court should depart from *Johnson*, which remains binding on this Court.

Moreover, defendant analogizes the trial court's findings during the probation violation hearing to a directed verdict of acquittal or a ruling that the prosecution presented insufficient evidence during trial. However, as discussed above, the trial court denied defendant's motion for a directed verdict, nor did the trial court rule during the probation violation hearing that the prosecution presented insufficient evidence. While collateral estoppel may be properly applied

in some instances, defendant has failed to demonstrate why it should be applied here where the trial court never "acquitted" defendant during his probation violating hearing.

Defendant asserts that the trial court erred when it ruled that there were no necessarily included lesser offenses to fourth-degree arson and that he was denied the effective assistance of counsel when his trial counsel failed to request a jury instruction for the necessarily included lesser offenses to fourth-degree arson. We disagree.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000); see also MCR 2.512(C); MCL 768.29. Defendant did not object to the jury instructions during trial, nor did he request an instruction on a lesser included offense for fourth-degree arson; therefore, this issue is unpreserved for appellate review. Further, as discussed below, defendant has waived review of any claim of instructional error.

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing to develop a record to support the claim. *Sabin*, 242 Mich App at 658-659. Defendant filed neither a motion for a new trial nor a motion for an evidentiary hearing to develop a record to support his claim of ineffective assistance of counsel. "Therefore, our review is limited to the appellate record." *Id*. at 659. The record on appeal "consists of 'the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced.' " *People v Gingrich*, 307 Mich App 656, 659 n 1; 862 NW2d 432 (2014), quoting MCR 7.210(A)(1).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *Trakhtenberg*, 493 Mich at 47. "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). This Court reviews the trial court's findings of fact for clear error, and reviews questions of constitutional law de novo. *Trakhtenberg*, 493 Mich at 47. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

Under MCL 768.32, "a lesser offense instruction is appropriate only if the lesser offense is necessarily included in the greater offense." *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004) "Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense." *People v Mendoza*, 468 Mich 527, 532 n 3; 664 NW2d 685 (2003). Therefore, "a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002).

The right to counsel guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). To obtain a new trial for a denial of this right, "a defendant must show that (1) counsel's performance fell below an objective standard of

reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

"Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases. There is accordingly a strong presumption of effective assistance of counsel." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (citation omitted). "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). The fact that a particular strategy ultimately failed does not demonstrate that a defendant was denied the effective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

During trial, the parties and the trial judge discussed proposed jury instructions for defendant's charge of fourth-degree arson and whether the jury should be instructed on MCL 750.75(1)(a)(*ii*), which prohibits willfully and maliciously burning, damaging, or destroying by fire "personal property having a value of $200.00 or more if the person has 1 or more prior convictions." In particular, the trial judge was unsure if he should "give two hundred dollars or more as a lesser," and he also contemplated only giving "the two hundred dollars or more" instruction because defendant had a "prior conviction." The trial judge then considered "doing a special verdict form" for the charge of fourth-degree arson, where the jury could specify if it found that Greene's automobile was worth at least $200 or at least $1,000. Ultimately, the trial judge deferred a decision to work on other instructions.

On the next day of trial, the trial judge and the parties resumed their discussion regarding the proposed jury instructions, and the trial judge explained he "did some research on that issue on the lesser and I found out in the arson statute that the word prior conviction refers to a prior conviction for the same chapter." After discussing other proposed jury instructions, the trial judge returned to the topic of fourth-degree arson, and he observed,

> I don't believe there's any lesser to that particular statute unless the Defendant had a prior conviction for -- when I talk about lesser, a lesser in terms of the monetary amount of the value of the damage unless the Defendant had a prior conviction for another arson conviction. That's the way I read it from the definitions in the arson section.

The trial court then asked the parties if they had any requests for the jury to be instructed on "lesser amounts" with regard to malicious destruction of personal property, the prosecutor replied that she had no objection "to a lesser," and the defense counsel responded that he had "No objection." After the parties finished reviewing the jury instructions, the trial court asked the parties if they had any objection to amending the verdict form for fourth-degree arson to "say one thousand dollars or more, but less than twenty thousand dollars" in order for the jury to recognize that it had "to find that particular value as one of the elements." Defense counsel and the prosecutor both replied "No." The trial court then asked if there were any objections to the jury instructions, and defense counsel replied "None." And ultimately, the trial court asked if defense counsel was "satisfied?" Defense counsel responded, "Yes."

Defendant contends that the trial court erred when it "ruled" that fourth-degree arson had no necessarily included lesser offenses. Defendant, however, has waived review of this issue. Waiver is defined as "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (citation and quotation marks omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Id.* An affirmative statement by counsel that there are no objections to the proposed jury instructions constitutes express approval of the jury instructions. *Id.* at 504-505. Defense counsel clearly and repeatedly indicated that he had no objections to the jury instructions; therefore, defendant has waived any claim of error regarding jury instructions.

Regardless, defendant's contentions relating to the trial court's "ruling" would otherwise be without merit as the trial court did not address whether fourth-degree arson had any necessarily lesser included offenses, but rather, the trial court appeared to only be concerned with whether, under the fourth-degree arson statute, the jury should be instructed under MCL 750.75(1)(a)(*ii*). The trial court properly concluded that MCL 750.75(1)(a)(*ii*) was inapplicable, and it did not reach the question of whether there were any necessarily included offenses for fourth-degree arson because defense counsel did not make any request for an instruction on necessarily included lesser offenses for fourth-degree arson. At most, defense counsel opined during the discussion regarding jury instructions that Greene's automobile was "not worth eleven hundred" dollars, but defense counsel never requested any instructions for necessarily included lesser offenses for fourth-degree arson.

Relatedly, defendant argues that defense counsel was ineffective for failing to request an instruction for damaging or destroying property by fire or explosive ("destroying property by fire"), MCL 750.78. Defendant's argument is without merit.

According to defendant, both the trial court and defense counsel "wanted the jury to be able to consider the necessarily-included lesser offense of arson or property worth $200.00 or more but less than $1000.00 [sic]." Therefore, defendant contends that defense counsel's failure to request an instruction for destroying property by fire was not a matter of trial strategy. However, defendant merely provides speculation in support of his claim. Moreover, during closing arguments, defense counsel focused on the reliability of Greene's identification of defendant, her lack of credibility, and other evidence that undermined her testimony. Therefore, defense counsel apparently pursued an all-or-nothing strategy during trial that hinged on Greene's credibility, as opposed to the value of her automobile.

Thus, the absence of any focus on the value of Greene's automobile during closing arguments undercuts defendant's speculation. Defendant has failed to carry his burden to overcome the strong presumption that defense counsel was effective. Additionally, defendant has failed to demonstrate that an instruction on destroying property by fire would have resulted in a different outcome where the jury was also instructed on lesser offenses for malicious destruction of personal property if it found that Greene's automobile had a value of less than $1,000, and where the jury ultimately found that Greene's automobile had a value of at least $1,000 with regard to both defendant's convictions.

-8-

Finally, defendant contends that the trial court erred during sentencing when it scored offense variable (OV) 2 (lethal potential of the weapon used), MCL 777.32(1)(b), OV 9 (number of victims), MCL 777.39(1)(c), and OV 16 (property obtained, damaged, lost, or destroyed), MCL 777.46(1)(c). We disagree.

"We review for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Defendant asserts that the trial court erred by assessing 15 points for OV 2 because there was insufficient evidence presented during trial to demonstrate that defendant used gasoline to light Greene's automobile on fire. Defendant's assertion fails.

Under MCL 777.32(1)(b), a trial court should assess 15 for OV 2 points if a defendant "possessed or used an incendiary device, an explosive device, or a fully automatic weapon." MCL 777.32(3)(d) provides that the term "incendiary device" "includes gasoline or any other flammable substance, a blowtorch, fire bomb, Molotov cocktail, or other similar device."

During trial, Greene testified that she saw defendant with a gas can during the incident. Additionally, Greene heard a "woooosh [sic]" sound shortly before she noticed that her automobile was on fire. Lieutenant Copley testified that the fire was initially started in "the passenger compartment of the vehicle" and that the fire was "humanly caused." He concluded that "an identified person had distributed a suspected ignitable liquid within the vehicle and ignited that liquid with a handheld ignition device and [he] base[d] that on fire patterns [he] seen [sic] at the scene as well as witness statements and witness interview."

During sentencing, the trial court noted that Greene observed defendant with "a gas can," despite the fact there "was no testimony of the firefighter regarding gasoline being used, at least not for the purposes of trial." Nonetheless, the trial court found there was "circumstantial evidence that demonstrates by a preponderance of the evidence that defendant used gasoline to start the fire." Accordingly, the trial court assessed 15 points for OV 2.

Therefore, defendant has failed to demonstrate how the trial court clearly erred when it determined by a preponderance of the evidence that defendant used gasoline to start the fire in Greene's automobile. Greene's testimony that defendant had a gas can at the time of the fire, the sound Greene heard before she noticed the fire, and Lieutenant's Copley's testimony all support an inference that defendant used gasoline to fuel the fire inside of Greene's automobile.

Next, defendant argues that the trial court erred when it assessed 10 points for OV 9 because the trial court improperly considered the firefighters who responded to the fire as victims. Defendant's argument is without merit.

Under MCL 777.39(1)(c), a trial court should assess 10 points for OV 9 where there "were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." As explained by this Court, "the statute governing

OV 9 does expressly define 'victim.' Specifically, trial courts must count 'each person who was placed in danger of physical injury or loss of life or property as a victim' under OV 9." *People v Fawaz*, 299 Mich App 55, 62; 829 NW2d 259 (2012), quoting MCL 777.39(2)(a). Further, "nothing in the text of the statute governing OV 9 indicates a legislative intent to limit the term 'victim' to exclude first responders, see MCL 777.39, and if the Legislature had intended to so limit the definition of 'victim' under OV 9, it could have done so." *Id*. at 63 (citation omitted).

Therefore, this Court has held that first responders may be considered victims for the purpose of assessing OV 9. *Id*. Moreover, under "the plain language of the statute, the sentencing court is to count 'each person who was placed in danger of injury or loss of life' as a victim." *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004).

During trial, Detroit Fire Department Firefighter Brian Toohy testified that he responded to the fire at Felicia's home and that he was accompanied by three other firefighters. And during sentencing, the trial court noted that there were "greater than two" firefighters who responded to the fire at Felicia's house, and that "firefighters are exposed to danger any time they go to a fire . . . ." Therefore, the trial court assessed 10 points for OV 9.

Defendant does not dispute that multiple firefighters responded to the fire at Felicia's house; however, defendant contends that "there was no evidence, beyond supposition, that the firefighters who extinguished the vehicle fire were in any danger." Notably, defendant does not contend that the fire was already extinguished by the time the firefighters arrived. Therefore, defendant's contention appears to rest on the extraordinary proposition that an active and uncontrolled fire is neither dangerous nor poses any threat that could result in physical injury or death to those within its proximity. As defendant has failed to provide any binding legal authority in support of his argument or any evidence that rebuts the intrinsically hazardous nature of an active and uncontrolled fire, defendant has not shown that the trial court clearly erred when it assessed OV 9.

And finally, defendant contends that the trial court erred when it assessed OV 16 because it previously found during defendant's probation violation hearing that Greene's automobile had a value of less than $1,000. Defendant's contention fails.

Under MCL 777.46(1)(c), a trial court must assess 5 points for OV 16 if property is "obtained, damaged, lost, or destroyed" and if "The property had a value of $1,000.00 or more but not more than $20,000.00." During trial, Greene testified that she purchased her automobile for $1,100 and that she owned the automobile for approximately four months. Additionally, Lieutenant Copley explained that he "did a blue book analysis through CBD.com," and that analysis "valued the car at -- in good condition at sixteen hundred dollars at the time of the incident." He confirmed that was the automobile's fair market value.

Further, the jury convicted defendant of both fourth-degree arson and malicious destruction of personal property. For both of those convictions the jury necessarily found that Greene's automobile had a value of at least $1,000. During sentencing, the fact that the trial court found that Greene's automobile had a value of less than $1,000 was not raised by either party. Moreover, there was no dispute regarding how OV 16 was scored at 5 points based on the value of Greene's automobile.

Nonetheless, defendant asserts, in a cursory fashion, that the trial court should not have been permitted rely on the facts found by the jury when it calculated defendant's sentencing guidelines score. Defendant does not contend that collateral estoppel should have operated here to restrain the trial court from reaching a factual finding that was contrary to its finding during defendant's probation violation hearing. Further, beyond noting the discrepancy between the trial court's findings during defendant's probation violating hearing and how OV 16 was assessed, defendant fails to provide any explanation why the jury-found facts should have been overridden by the trial court's findings in a separate proceeding.

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, defendant has abandoned this contention on appeal.

Regardless, even assuming that defendant had demonstrated that the trial court erred, defendant's OV total would have been reduced from 40 to 35 points, a reduction that would not have impacted defendant's recommended minimum sentence guidelines range. MCL 777.66. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell